**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MONIA WILLIAMS, individually and as Guardian ad Litem for L.S. and Q.S, minors,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY, et al.,<br><br>Defendants. | Case No. 19-cv-01811-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; AND DISMISSING CLAIMS 6 AND 7 WITH LEAVE TO AMEND**<br><br>[Re: ECF 35] |

Monia Williams ("Williams") filed this suit on behalf of herself and her minor children, daughter L.S. and son Q.S., following removal of the children from the home based on suspected abuse of L.S. by an uncle. The children remained out of the home for approximately three months, at which time juvenile dependency proceedings were dismissed after a contested trial. The complaint alleges violations of federal and state law by law enforcement officers and social workers involved in the removal of the children and the dependency proceedings.

Defendants Josefina Duran and Marcos Estrada ("Moving Parties"), both social workers, seek dismissal of the only two claims asserted against them, Claim 6 for substantive due process violations under the Fourteenth Amendment and Claim 7 for intentional infliction of emotional distress. Moving Parties contend that they are entitled to immunity under the California Government Code, absolute immunity, and qualified immunity, and they seek dismissal under Federal Rule of Civil Procedure 12(b)(6). Following completion of the briefing on the motion, the Court vacated the scheduled hearing date of October 17, 2019 and advised the parties that the motion would be submitted for decision without oral argument. *See* Order, ECF 40.

For the reasons discussed below, the motion is GRANTED IN PART AND DENIED IN PART, and Claims 6 and 7 are DISMISSED WITH LEAVE TO AMEND.

## I. BACKGROUND[1]

Williams adopted L.S. (a girl) and Q.S. (a boy), who are twins, when they were three years old. Compl. ¶ 8, ECF 1. The children were nine years old at the time of the events giving rise to this lawsuit. *Id*. At that time, Williams and the children resided in Monterey, California, in a household that also included the children's grandmother and Williams' twenty-two year old nephew. Compl. ¶¶ 58-60.

The children's biological parents lost custody of the children due to mental health issues and use of illegal drugs. Compl. ¶ 62. The children likely were exposed to illegal drugs and alcohol in utero, and they received neglectful parenting in their early years. Compl. ¶ 63. When they were enrolled in school, it became apparent that both children suffered from developmental delays. Compl. ¶ 64. Neither child was performing at or near grade level, and Q.S. had difficulties with speech and language comprehension. *Id*.

On May 4, 2018, a teacher at the Oasis School attended by Q.S. and L.S. made a report to the Monterey County Child Abuse Hotline. Compl. ¶ 72. The report stated that Q.S. said he gets "sad" when his uncle tells Q.S. to stay downstairs and watch television while taking L.S. upstairs for special time. Compl. ¶ 73. Q.S. reportedly said that when he would go upstairs to try the door to the room where Pat and his sister L.S. were, the uncle would yell at Q.S. to go watch television. *Id*. The uncle, Williams' brother Lapatrick ("Pat"), was sixty-three years old at the time of the report. Compl. ¶¶ 73-76.

Defendant Linda Castillo, a Monterey County social worker, was assigned the case and she went to the school on May 4 to begin an investigation. Compl. ¶ 79. Castillo spoke with Q.S. alone and then spoke with L.S. alone. Compl. ¶¶ 80-153. Castillo did not attempt to contact Williams before speaking with the children. Compl. ¶ 81. Plaintiffs allege that Defendant Castillo's investigation was "wholly inadequate and unreasonable," as she did not ask school personnel about the children's possible cognitive issues, misconstrued the children's responses to her questions, and formed an opinion that sexual abuse had occurred but did not ask follow-up

---

[1] Plaintiff's well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

2

questions regarding the frequency or circumstances of the suspected abuse. Compl. ¶¶ 84, 86, 101-03, 113-16, 127-30, 145-51. Castillo was unable to "qualify" either Q.S. or L.S. Compl. ¶¶ 87-88, 121. The complaint defines the term "qualify" to mean asking children "a series of questions to ascertain their ability to understand the truth from a lie, fantasy from reality, and help assess their understanding of the difference between a truth and a lie, and the importance of telling the truth." Compl. ¶ 57. The children's "responses may be used as a prerequisite to allowing their testimony under oath or in a legal proceeding, and as a means of evaluating their credibility." *Id*.

Castillo called in a request for law enforcement to report to the school regarding suspected child sexual abuse. Compl. ¶ 154. In response, several City of Salinas police officers traveled to the Oasis School, including Defendants Guadalupe Gonzalez, Blake Ziebell, Dana Cornelison, and Mario Reyes, Jr. Compl. ¶ 155. The defendant officers did not start their body cams at the beginning of their investigation, but turned them on randomly. Compl. ¶ 158. Castillo told the officers that: Pat and L.S. played a game called "secret special time" in an upstairs bedroom, when Q.S. would go upstairs the bedroom door was locked, and Pat was no longer allowed to go to the house. Compl. ¶ 161. Plaintiffs allege that the children never told Castillo any of those things. *Id*.

The police officers questioned Q.S. and then L.S. without attempting to contact Williams first. Compl. ¶¶ 165-276. Plaintiffs characterize the interview of L.S. as "horribly inappropriate, leading, unprofessional." Compl. ¶ 268. Plaintiffs claim that the officers asked repeated questions in an attempt to elicit confirmation of sexual abuse, and that the officers' reports of the interviews contained lies, misrepresentations, and omissions. Compl. ¶¶ 269-276.

At some point after the police arrived, another Monterey County social worker, Defendant Justin Ricks, arrived at the school and took over from Castillo. Compl. ¶¶ 83, 86, 277. Once Ricks received the police officers' information regarding their interviews of the children, the school principal, and the teacher's aide, Ricks called Monterey County supervisory personnel. Compl. ¶ 280. The supervisors included Defendants Christine Lerable, Rebecca Baron, and Charlene Lord. Compl. ¶¶ 17-19, 280. Plaintiffs allege that "despite the glaring inconsistencies in the children's statements," the decision was made to remove the children. Compl. ¶ 280.

3

Williams had arrived at the school while police officers were questioning the children, but she was not told what was occurring, only that she should "wait." Compl. ¶ 281. The first Williams was told about the investigation was when Ricks informed her that she had two options: propose a relative who would take the children during the investigation or allow the children to be taken into protective custody. Compl. ¶ 283. The decision had been made to remove the children before anyone interviewed Williams. Compl. ¶ 284. Williams proposed placement with her sister, Regina Mason, who previously had worked for Monterey County as a social worker supervisor. Compl. ¶¶ 285, 299. Mason was called on the telephone and stated that she was willing to take the children. Compl. ¶¶ 290-91. However, Ricks became upset with Mason when she questioned his experience and knowledge, and asked him among other things why the children could not return home when the alleged perpetrator did not live in the home. Compl. ¶ 325-26. Plaintiffs allege that Ricks vindictively acted on his personal feelings by deciding that the children would not be placed with Mason, even though she offered to come pick them up. Compl. ¶¶ 327, 332. Ricks took the children to his car without allowing Williams to speak to them or comfort them. Compl. ¶¶ 334-337. Williams tried to approach to calm the children down, which conduct Ricks mischaracterized by later reporting that Williams was out of control, physically aggressive, and had to be restrained. Compl. ¶¶ 337-39.

Ricks placed the children with the school teacher's aide, Whitney Lopez, over Williams' objection. Compl. ¶¶ 341-42. Ricks also asked Defendants Blake Ziebell and Eduardo Bejarano, both City of Salinas police officers, to arrange for a videotaped interview of the children by another social worker. Compl. ¶ 340. The interview took place on May 5, 2018, the day after the children were taken into custody. Compl. ¶¶ 343-44. Neither child could be "qualified." Compl. ¶ 350.

Because Williams' sister, Mason, was a former employee of Monterey County, the decision was made to have the case handled by Santa Cruz County social workers. Compl. ¶ 355. Defendants Marcos Estrada and Josefina Duran, both Santa Cruz County social workers, became involved at that point and were tasked with conducting an independent investigation. *Id*. Estrada was given more than twelve body cam videos that were taken at the school on May 4, 2018, as

4

well of transcripts of the videos. Compl. ¶ 296. However, after Estrada had watched only one video, Duran directed him to stop watching, and he complied. Compl. ¶¶ 296-97. Estrada was to make recommendations to the juvenile court about what should happen with the family. Compl. ¶ 296. Estrada prepared a Jurisdiction Report for the court which failed to advise that the children had not been qualified during the interviews. Compl. ¶ 352. Estrada "recommended further court and agency involvement in the Williams family and forced the matter to a contested trial, prolonging the time the mother and children were separated, and, the time the children continued to live outside of their home." Compl. ¶ 357. Plaintiffs allege that Estrada and Duran conspired with other officials to make "stick" Defendants' allegations that L.S. was sexually abused and Williams failed to protect her children. Compl. ¶ 358.

Defendant Chelsea Chacon, a Monterey County social worker, signed the Petition pursuant to Welfare & Institutions Code Section 300, alleging among other things that L.S. had been a victim of sexual abuse or was at risk for sexual abuse, and that Williams had failed to protect L.S. adequately. Compl. ¶¶ 21, 46-49. Plaintiffs allege that it is unclear why Chacon signed the Petition, if Santa Cruz County was supposed to handling the case. Compl. ¶ 359. Plaintiffs claim that all of the allegations in the Petition were false. Compl. ¶ 50. The children remained out of Williams' custody for approximately three months, at which time juvenile proceedings were dismissed after a contested trial. Compl. ¶ 294. Plaintiffs allege that the Petition was "replete with lies, misrepresentations, and omissions of wholly exculpatory and/or mitigating, clarifying, explanatory facts and circumstances known to the Defendant Social Workers." Compl. ¶ 23.

Williams filed this action on April 4, 2019, on behalf of herself and as guardian ad litem for L.S. and Q.S., asserting claims against Monterey County and its employees Ricks, Castillo, Lerable, Baron, Lord, and Chacon; the City of Salinas and City police officers Ziebell, Gonzalez, Cornelison, Reyes, and Bejarano; and Santa Cruz County social workers Estrada and Duran. The complaint contains six federal civil rights claims under 42 U.S.C. § 1983, and a state law claim for intentional infliction of emotional distress: (1) Violation of 4th Amendment – Seizure by Interrogation; (2) Violation of 14th Amendment – Interrogation of Minors; (3) Violation of 4th Amendment – Removal; (4) 14th Amendment Violation (Procedural); (5) 14th Amendment

Violation (Substantive) – Interference Familial Association; (6) 14th Amendment Violation (Substantive) – Continuing Detention – Fraud; and (7) Intentional Infliction of Emotional Distress. Plaintiffs seek general, special, and compensatory damages; punitive damages; statutory damages; attorneys' fees and costs; and any further relief the Court may deem just and proper.

Monterey County and its employees answered the complaint on June 6, 2019, and the City of Salinas and its officers answered on July 22, 2019. *See* Answers, ECF 11, 28. Moving Parties Estrada and Duran filed the present motion to dismiss, which as noted above has been submitted for decision without oral argument. *See* Order, ECF 40.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating a Rule 12(b)(6) motion, the district court must consider the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## III. DISCUSSION

The complaint asserts two claims against Santa Cruz County social workers Estrada and Duran. Claim 6, asserted under § 1983, alleges that Moving Parties and other Defendants violated Plaintiffs' Fourteenth Amendment substantive due process rights to familial association by submitting fraudulent reports to the juvenile dependency court, which resulted in continued separation of the family after the initial removal of the children. *See* Compl. ¶¶ 392-94, 398.

Claim 7, asserted under state law, alleges that Moving Parties and other Defendants are liable for intentional infliction of emotional distress ("IIED"). *See* Compl. ¶ 402. Moving Parties contend that they are entitled to immunity under the California Government Code, absolute immunity, and qualified immunity, and they request dismissal of Claims 6 and 7 on those bases. In opposition, Plaintiffs argue that Moving Parties are not protected by the claimed immunities.

Before turning to the parties' arguments regarding application of the claimed immunities, the Court summarizes the complaint's allegations against Estrada and Duran. Estrada was tasked with making recommendations to the juvenile court about what should happen with the family. Compl. ¶ 296. Duran was Estrada's supervisor. Compl. ¶ 355. Estrada was given more than twelve body cam videos that were taken at the school on May 4, 2018, and transcripts of the videos. Compl. ¶ 296. However, after Estrada had watched only one video, Duran directed him to stop watching, and he complied. Compl. ¶¶ 296-97. Estrada prepared a Jurisdiction Report for the court which failed to advise that the children had not been qualified during the interviews. Compl. ¶ 352. Estrada also "recommended further court and agency involvement in the Williams family and forced the matter to a contested trial, prolonging the time the mother and children were separated, and, the time the children continued to live outside of their home." Compl. ¶ 357. It is unclear whether that recommendation was in the Jurisdiction Report or some other report. Estrada and Duran conspired with other officials to make allegations "stick" that L.S. was sexually abused and Williams failed to protect her children. Compl. ¶ 358.

Plaintiffs have neither attached Estrada's report(s) to the complaint, nor alleged any of the specific facts or findings contained in the report(s). Plaintiffs have not alleged what materials were provided to Estrada other than the body cam videos and transcripts, and they have not alleged whether Estrada read the transcripts before preparing his report(s). With respect to the allegations that Estrada and Duran "conspired" with other Defendants, Plaintiffs have not alleged what form that conspiracy took or what actions Estrada and Duran performed in furtherance of the conspiracy. Finally, Plaintiffs have not alleged any conduct on the part of Duran other than directing Estrada to stop watching the body cam videos.

7

### A. Government Code Immunities

Moving Parties first argue that they are entitled to immunity under California Government Code §§ 820.2 and 821.6. As Plaintiffs point out, "[s]tate statutory immunity provisions do not apply to federal civil rights actions." *Guillory v. Orange Cty.*, 731 F.2d 1379, 1382 (9th Cir. 1984). The Court therefore evaluates Moving Parties' argument based on the Government Code only with respect to Claim 7 for IIED.

Section 820.2, which shields discretionary decisions by public employees, reads as follows: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. "Under this provision, social workers are entitled to immunity for their child removal and placement decisions in dependency proceedings." *Christina C. v. Cty. of Orange*, 220 Cal. App. 4th 1371, 1381 (2013), *as modified* (Oct. 29, 2013). "The immunity applies even to lousy decisions in which the worker abuses his or her discretion, including decisions based on woefully inadequate information." *Id.* (internal quotation marks and citation omitted).

Section 821.6, which grants immunity for prosecutorial or quasi-prosecutorial decisions, reads as follows: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. This provision entitles a social worker to "absolute immunity from liability arising out of her actions in investigating child abuse allegations, initiating dependency proceedings and removing a child from his custodial parent." *Jacqueline T. v. Alameda Cty. Child Protective Servs.*, 155 Cal. App. 4th 456, 467 (2007), *as modified* (Oct. 4, 2007). "[I]mmunity under section 821.6 covers not just the act of filing a criminal complaint, but also other prosecutorial or quasi-prosecutorial functions such as weighing and presenting evidence when rendering a decision on whether to proceed with litigation." *Id.*

California courts have held broadly that "a social worker's decisions relating to, as here, the investigation of child abuse, removal of a minor, and instigation of dependency proceedings,

are discretionary decisions subject to immunity under section 820.2, and/or prosecutorial or quasi-prosecutorial decisions subject to immunity under section 821.6." *Jacqueline T.*, 155 Cal. App. 4th at 466. "Such courts have reasoned that civil liability for a mistaken decision would place the courts in the unseemly position of making the county accountable in damages for a decisionmaking process delegated to it by statute." *Id*. (internal quotation marks, citation, and alteration omitted).

Claim 7, which is asserted against thirteen Defendants, does not specify what conduct of Moving Parties renders them liable. Plaintiffs allege that:

> [T]he facts and circumstances set forth hereinabove, inclusive of but not limited to, the facts and circumstances surrounding the interrogation of the children at school without mother's prior notice, consent, or opportunity to be present, the rude treatment of Monia by Ricks, the removal of the children and the failure and/or refusal to promptly return the children, the inclusion of false statements of fact, misrepresentations and the repeated failure to include exculpatory information in documents filed with and provided to the juvenile court, all of which constituted intentional actions or omissions intended to cause severe emotional distress to the children and their mother Monia by the way of continuing the family members separation and disruption in their personal lives, and the aforementioned actions, acts, misrepresentations and omissions of exculpatory material in court provided documents was done with intent and/or with reckless disregard for the likelihood of causing the plaintiffs severe emotional distress, and so caused severe emotional distress to Plaintiffs.

Compl. ¶ 402.

The "facts and circumstances set forth" in the preceding paragraphs of the complaint are fairly sparse with respect to Estrada and Duran. Those facts and circumstances, summarized above, do not show that Estrada and Duran included false statements or misrepresentations in the report(s) submitted to the juvenile court. To the extent Plaintiffs allege that Estrada's Jurisdiction Report failed to advise that the children had not been qualified during the interviews, *see* Compl. ¶ 352, Plaintiffs do not allege that Estrada knew the children had not been qualified or that the lack of qualification was exculpatory information. Read liberally, the allegations at most suggest that Estrada failed to conduct an adequate investigation before preparing his report(s) for the juvenile court. However, Moving Parties' investigation and reporting to the juvenile court fall squarely within the Government Code immunities discussed above. *See Ortega v. Sacramento Cty. Dep't of Health & Human Servs.*, 161 Cal. App. 4th 713, 733 (2008) (finding that § 820.2 immunity

9

applied to claims based on social workers' alleged failure to gather the pertinent facts before releasing child to her father, who then stabbed child in the heart and lung).

In their opposition, Plaintiffs correctly state that §§ 820.2 and 821.6 are cabined by California Government Code § 820.21, which provides as follows: "[T]he civil immunity of juvenile court social workers, child protection workers, and other public employees authorized to initiate or conduct investigations or proceedings . . . shall not extend to any of the following, if committed with malice: (1) Perjury[;] (2) Fabrication of evidence[;] (3) Failure to disclose known exculpatory evidence[;] (4) Obtaining testimony by duress . . . or undue influence. . . ." Cal. Gov't Code § 820.21. Plaintiffs argue that they have alleged facts supporting application of § 820.21. However, as set forth above, Plaintiffs have not alleged any specific facts indicating that Moving Parties committed perjury, falsified evidence, or engaged in any of the other conduct that would trigger § 820.21.

Accordingly, Moving Parties' motion to dismiss Claim 7 for IIED is GRANTED WITH LEAVE TO AMEND on that basis that the claim appears to be barred by Government Code §§ 820.2 and 821.6, and Plaintiffs have not alleged facts giving rise to application of § 820.21.

### B. Absolute Immunity

Moving Parties next argue that they are entitled to absolute, quasi-judicial immunity for actions taken in the context of dependency proceedings. "Absolute immunity from private lawsuits covers the official activities of social workers only when they perform quasi-prosecutorial or quasi-judicial functions in juvenile dependency court." *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1115 (9th Cir. 2017). Unlike state statutory immunities, the absolute immunity based on a social worker's quasi-prosecutorial or quasi-judicial conduct extends to § 1983 suits. *See Beltran v. Santa Clara Cty.*, 514 F.3d 906, 908 (9th Cir. 2008).

"[L]ike a prosecutor, the social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children." *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1109 (9th Cir. 2010) (internal quotation marks, citation, and alteration omitted). "Thus, the critical decision to institute proceedings to make a child a ward of the state is

functionally similar to the prosecutorial institution of a criminal proceeding, and, therefore, deserves absolute immunity." *Id*. (internal quotation marks and citation omitted). "The factor that determines whether absolute immunity covers a social worker's activity or 'function' under scrutiny is whether it was investigative or administrative, on one hand, or part and parcel of presenting the state's case as a generic advocate on the other." *Hardwick*, 844 F.3d at 1115. "Absolute immunity is available only if the function falls into the latter category." *Id*.

The absolute immunity does not apply to "conduct well outside of the social workers' legitimate role as quasi-prosecutorial advocates in presenting the case," for example making false statements in court reports, fabricating evidence, and suppressing exculpatory evidence. *See Hardwick*, 844 F.3d at 1115-16; *see also Beltran*, 514 F.3d at 907 (holding that social workers "are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because such actions aren't similar to discretionary decisions about whether to prosecute.").

Although Plaintiffs argue in their opposition that Moving Parties made false statements and omitted exculpatory information in documents they submitted to the juvenile court, Plaintiffs have not alleged such facts in the complaint. While Plaintiffs allege that Estrada's Jurisdiction Report failed to advise that the children had not been qualified during the interviews, *see* Compl. ¶ 352, Plaintiffs do not allege that Estrada knew the children had not been qualified or that the lack of qualification was exculpatory information. Plaintiffs do not identify any other facts or omissions that either Estrada or Duran knowingly omitted from reports to the juvenile court.

The Court nonetheless concludes that the absolute immunity does not provide a basis for dismissal because the complaint alleges facts suggesting that at least some of Moving Parties' activities fall outside the scope of the immunity. For example, Plaintiffs allege that Estrada undertook "what was supposed to be by California law an 'independent investigation.'" Compl. at 355. Plaintiffs contend that Estrada failed to conduct the required independent investigation, as he stopped viewing the body cam footage after only one video at the direction of Duran, and merely acted in "lockstep" with Monterey County social workers when he submitted his report(s) to the

11

juvenile court. *See* Compl. ¶¶ 356-57. As discussed above, "investigative and administrative" activities of a social worker do not trigger the absolute, quasi-prosecutorial immunity. *See Hardwick*, 844 F.3d at 1115. These allegations, construed in the light most favorable to Plaintiffs, show conduct by Estrada and Duran falling into the "investigative and administrative" category.

Moving Parties' motion to dismiss Claims 6 and 7 on the basis of the absolute, quasi-judicial immunity is DENIED.

### C. Qualified Immunity

Finally, Moving Parties argue that they are entitled to qualified immunity. Plaintiffs correctly point out that "the doctrine of qualified immunity does not shield defendants from state law claims." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013). The Court therefore considers the qualified immunity argument only with respect to Claim 6, asserted under § 1983.

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dunn v. Castro*, 621 F.3d 1196, 1198-99 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In analyzing whether a government official is entitled to qualified immunity, the court looks at two distinct questions: (1) whether the facts alleged, construed in the light most favorable to the injured party, establish the violation of a constitutional right; and (2) whether the right was clearly established such that a reasonable government official would have known that his conduct was unlawful in the situation he confronted. *Id.* at 1199. Courts may exercise their discretion in deciding "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

Plaintiffs have not alleged facts rising to the level of a constitutional violation. As presently framed, the well-pled factual allegations of the complaint suggest that Moving Parties failed to undertake an adequate investigation before preparing one or more reports for the juvenile court. Plaintiffs do not cite any cases establishing that negligence in investigating and reporting

12

gives rise to liability under § 1983 and the Fourteenth Amendment. Nor could they. Plaintiffs assert that Moving Parties violated their Fourteenth Amendment substantive due process rights to familial association by submitting fraudulent reports to the juvenile dependency court, which resulted in continued separation of the family after the initial removal of the children. *See* Compl. ¶¶ 392-94, 398. However, the Supreme Court has made clear that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

Plaintiffs cite the Ninth Circuit's 2009 decision in *Greene v. Camreta* for the proposition that "the right to be free from deception in the presentation of evidence during a protective custody proceeding was clearly established" at the time of the events in question and was violated by Moving Parties. *Greene v. Camreta*, 588 F.3d 1011, 1035 (9th Cir. 2009), *vacated in part*, 563 U.S. 692 (2011), and *vacated in part*, 661 F.3d 1201 (9th Cir. 2011). "To support a § 1983 claim of judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Id*. As discussed above, Plaintiffs have not alleged facts showing that Moving Parties Estrada and Duran deliberately or recklessly made false statements or omissions in the report(s) prepared for the juvenile court.

Accordingly, Moving Parties' motion to dismiss Claim 6 on the basis of qualified immunity is GRANTED WITH LEAVE TO AMEND.

//
//
//
//
//
//
//
//
//

## IV. ORDER

(1) The motion to dismiss is GRANTED IN PART AND DENIED IN PART, as set forth herein;

(2) Claims 6 and 7 as asserted against Moving Parties Estrada and Duran are DISMISSED WITH LEAVE TO AMEND;

(3) Any amended complaint shall be filed on or before November 15, 2019; and

(4) Leave to amend is limited to the deficiencies identified in this order; Plaintiffs may not add parties or claims without prior express leave of the Court.

Dated: October 17, 2019

_____
BETH LABSON FREEMAN
United States District Judge