**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MONIA WILLIAMS, individually and as Guardian ad Litem for L.S. and Q.S, minors, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF MONTEREY, et al., <br><br> Defendants. | Case No. 19-cv-01811-BLF <br><br> **ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> [Re: ECF 46] |

Plaintiff Monia Williams ("Williams"), individually and as Guardian ad Litem for her two minor children, sues the County of Monterey, the City of Salinas, and individual social workers and police officers who were involved in the removal of her children based on suspected abuse. Defendants Josefina Duran and Marcos Estrada ("Moving Parties") move to dismiss the only claims asserted against them in the first amended complaint ("FAC"), Claim 6 for deprivation of substantive due process rights under the Fourteenth Amendment and Claim 7 for intentional infliction of emotional distress. The Court previously dismissed those claims pursuant to Federal Rule of Civil Procedure 12(b)(6) after determining that the complaint did not allege facts sufficient to state a claim against Moving Parties. Moving Parties contend that the FAC does not cure the defects addressed in the Court's prior dismissal order, and they now seek dismissal of Claims 6 and 7 without leave to amend.

The motion is DENIED for the reasons discussed below.

## I. BACKGROUND[1]

Williams adopted twins L.S. (a girl) and Q.S. (a boy) when they were three years old. FAC ¶ 8, ECF 43. The children were nine years old at the time of the events giving rise to this lawsuit. *Id.* The children's biological parents lost custody of the children due to mental health issues and use of illegal drugs. FAC ¶ 62. The children likely were exposed to illegal drugs and alcohol in utero, and they received neglectful parenting in their early years. FAC ¶ 63. When they were enrolled in school, it became apparent that both children suffered from developmental delays. FAC ¶ 64. Neither child was performing at or near grade level, and Q.S. had difficulties with speech and language comprehension. *Id.*

On May 4, 2018, a teacher at the school attended by both children made a report to the Monterey County Child Abuse Hotline. FAC ¶ 72. The report stated that Q.S. said he gets "sad" when his Uncle Pat (Williams' brother) tells Q.S. to stay downstairs and watch television while taking L.S. upstairs for special time. FAC ¶ 73. Q.S. reportedly said that when he would go upstairs to try the door to the room where Uncle Pat and his sister L.S. were, Uncle Pat would yell at Q.S. to go watch television. *Id.* Uncle Pat was sixty-three years old at the time of the report. FAC ¶ 76. He did not reside at Williams' home. FAC ¶¶ 58-61, 81-91.

Defendant Linda Castillo, a Monterey County social worker, was assigned the case and she went to the school on May 4 to begin an investigation. FAC ¶ 79. Castillo did not attempt to contact Williams before speaking with the children. FAC ¶¶ 80-81. Plaintiffs allege that Defendant Castillo's investigation was "wholly inadequate and unreasonable," as she did not ask school personnel about the children's possible cognitive issues, misconstrued the children's responses to her questions, and formed an opinion that sexual abuse had occurred but did not ask follow-up questions regarding the frequency or circumstances of the suspected abuse. FAC ¶¶ 84-86. Castillo was unable to "qualify" either child. FAC ¶¶ 87-88, 121. The complaint defines the term "qualify" to mean asking children "a series of questions to ascertain their ability to understand the truth from a lie, fantasy from reality, and help assess their understanding of the

---

[1] Plaintiff's well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

difference between a truth and a lie, and the importance of telling the truth." FAC ¶ 57. The children's "responses may be used as a prerequisite to allowing their testimony under oath or in a legal proceeding, and as a means of evaluating their credibility." *Id*.

Castillo called in a request for law enforcement to report to the school regarding suspected child sexual abuse. FAC ¶ 154. In response, several City of Salinas police officers traveled to the school, including Defendants Guadalupe Gonzalez, Blake Ziebell, Dana Cornelison, and Mario Reyes, Jr. FAC ¶ 155. The defendant officers did not start their body cams at the beginning of their investigation, but turned them on randomly. FAC ¶ 158. Castillo told the officers that: Pat and L.S. played a game called "secret special time" in an upstairs bedroom, when Q.S. would go upstairs the bedroom door was locked, and Pat was no longer allowed to go to the house. FAC ¶ 160. Plaintiffs allege that the children never told Castillo any of those things. *Id*.

The police officers questioned Q.S. and then L.S. without attempting to contact Williams first. FAC ¶ 165, 202-03. Plaintiffs characterize the interview of L.S. as "horribly inappropriate, leading, unprofessional." FAC ¶ 268. Plaintiffs claim that the officers asked repeated questions in an attempt to elicit confirmation of sexual abuse, and that the officers' reports of the interviews contained lies, misrepresentations, and omissions. FAC ¶¶ 269-276.

At some point after the police arrived, another Monterey County social worker, Defendant Justin Ricks, arrived at the school and took over from Castillo. FAC ¶ 277. Once Ricks received the police officers' information regarding their interviews of the children, the school principal, and the teacher's aide, Ricks called Monterey County supervisory personnel. FAC ¶ 280. The supervisors included Defendants Christine Lerable, Rebecca Baron, and Charlene Lord. *Id*. Plaintiffs allege that "despite the glaring inconsistencies in the children's statements," the decision was made to remove the children. *Id*.

Williams had arrived at the school while police officers were questioning the children, but she was not told what was occurring, only that she should "wait." FAC ¶ 281. The first Williams was told about the investigation was when Ricks informed her that she had two options: propose a relative who would take the children during the investigation or allow the children to be taken into protective custody. FAC ¶ 283. The decision had been made to remove the children before

3

anyone interviewed Williams. FAC ¶ 284. Williams proposed placement with her sister, Regina Mason, who previously had worked for Monterey County as a social worker supervisor. FAC ¶¶ 285, 299. Mason was called on the telephone and stated that she was willing to take the children. FAC ¶¶ 289-91. However, Ricks became upset with Mason when she questioned his experience and knowledge, and asked him among other things why the children could not return home when the alleged perpetrator did not live in the home. FAC ¶¶ 325-27. Plaintiffs allege that Ricks vindictively acted on his personal feelings by deciding that the children would not be placed with Mason, even though she offered to come pick them up. FAC ¶¶ 327-32. Ricks took the children to his car without allowing Williams to speak to them or comfort them. FAC ¶¶ 334-337. Williams tried to approach to calm the children down, which conduct Ricks mischaracterized by later reporting that Williams was out of control, physically aggressive, and had to be restrained. FAC ¶¶ 337-39.

Ricks placed the children with the school teacher's aide, Whitney Lopez, over Williams' objection. FAC ¶¶ 341-42. Ricks also asked Defendants Blake Ziebell and Eduardo Bejarano, both City of Salinas police officers, to arrange for a videotaped interview of the children by another social worker. FAC ¶ 340. The interview took place on May 5, 2018, the day after the children were taken into custody. FAC ¶¶ 343-44. Neither child could be "qualified." FAC ¶ 350.

Because Williams' sister, Mason, was a former employee of Monterey County, the decision was made to have the case handled by Santa Cruz County social workers. FAC ¶ 356. Defendants and Moving Parties Marcos Estrada and Josefina Duran, both Santa Cruz County social workers, became involved at that point and were tasked with conducting an independent investigation. *Id*. Duran was Estrada's supervisor. FAC ¶¶ 30, 356. Estrada was given more than twelve body cam videos that were taken at the school on May 4, 2018, as well of transcripts of the videos. FAC ¶ 296. However, after Estrada had watched only one video, Duran directed him to stop watching, and he complied. FAC ¶¶ 296-97. Estrada was "tasked with making recommendations to the juvenile court about what should happen with the family." FAC ¶ 296. Estrada prepared a Jurisdiction Report for the court which failed to advise that the children had not

4

been qualified during the interviews. FAC ¶ 352. As the time he drafted the Jurisdiction Report, Estrada knew that the children had not been qualified, based on his conversations with other social workers in the case and information in the Salinas police reports. *Id*. Without including the information that the children could not be qualified, Estrada "recommended further court and agency involvement in the Williams family and forced the matter to a contested trial, prolonging the time the mother and children were separated, and, the time the children continued to live outside of their home." FAC ¶ 358. Plaintiffs allege that Estrada and Duran conspired with other officials to make "stick" allegations that L.S. was sexually abused and Williams failed to protect her children. FAC ¶ 359.

Defendant Chelsea Chacon, a Monterey County social worker, signed the Petition pursuant to Welfare & Institutions Code Section 300, alleging among other things that L.S. had been a victim of sexual abuse or was at risk for sexual abuse, and that Williams had failed to protect L.S. adequately. FAC ¶¶ 21, 46-49. Plaintiffs allege that it is unclear why Chacon signed the Petition, if Santa Cruz County was supposed to handling the case. FAC ¶ 360. Plaintiffs claim that all of the allegations in the Petition were false. FAC ¶ 50. The children remained out of Williams' custody for approximately three months, at which time juvenile proceedings were dismissed after a contested trial. FAC ¶ 294. Plaintiffs allege that the Petition was "replete with lies, misrepresentations, and omissions of wholly exculpatory and/or mitigating, clarifying, explanatory facts and circumstances known to the Defendant Social Workers." FAC ¶ 23.

Williams filed this action on April 4, 2019, on behalf of herself and as guardian ad litem for L.S. and Q.S., asserting claims against Monterey County and its employees Ricks, Castillo, Lerable, Baron, Lord, and Chacon; the City of Salinas and City police officers Ziebell, Gonzalez, Cornelison, Reyes, and Bejarano; and Santa Cruz County social workers Estrada and Duran. The operative FAC contains six federal civil rights claims under 42 U.S.C. § 1983, and a state law claim for intentional infliction of emotional distress: (1) Violation of 4th Amendment – Seizure by Interrogation; (2) Violation of 14th Amendment – Interrogation of Minors; (3) Violation of 4th Amendment – Removal; (4) 14th Amendment Violation (Procedural); (5) 14th Amendment Violation (Substantive) – Interference Familial Association; (6) 14th Amendment Violation

1  (Substantive) – Continuing Detention – Fraud; and (7) Intentional Infliction of Emotional Distress. Plaintiffs seek general, special, and compensatory damages; punitive damages; statutory damages; attorneys' fees and costs; and any further relief the Court may deem just and proper.

Monterey County and its employees answered the complaint on June 6, 2019, and the City of Salinas and its officers answered on July 22, 2019. *See* Answers, ECF 11, 28. Moving Parties Estrada and Duran moved to dismiss, and their motion was granted with leave to amend in an order issued October 17, 2019 ("Prior Dismissal Order"). *See* Prior Dismissal Order, ECF 41. Plaintiffs filed the operative FAC on November 15, 2019. *See* FAC, ECF 43.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating a Rule 12(b)(6) motion, the district court must consider the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## III. DISCUSSION

The FAC asserts two claims against Moving Parties Estrada and Duran. Claim 6, asserted under § 1983, alleges that Moving Parties and other defendants violated Plaintiffs' Fourteenth Amendment substantive due process rights to familial association by submitting fraudulent information to the juvenile dependency court, which resulted in continued separation of the family after the initial removal of the children. *See* FAC ¶¶ 392-98. Claim 7, asserted under state law,

alleges that Moving Parties and other defendants are liable for intentional infliction of emotional distress ("IIED"). *See* FAC ¶ 402.

At the start of the hearing, the Court expressed its tentative view that both claims were subject to dismissal. However, after reviewing the new allegations highlighted by Plaintiffs' counsel during the lengthy oral argument, as well as the relevant case law, the Court concludes that Plaintiffs have alleged enough facts to satisfy the applicable pleading standard and to show that the claims may fall outside the scope of the immunities asserted by Moving Parties.

### A. 14th Amendment Violation – Substantive Due Process (Claim 6)

In Claim 6, Plaintiffs assert that Moving Parties and other defendants violated Plaintiffs' Fourteenth Amendment substantive due process rights to familial association by submitting fraudulent information to the juvenile dependency court, which resulted in continued separation of the family after the initial removal of the children. *See* FAC ¶¶ 392-99. Moving Parties argue that Plaintiffs have not stated a claim for violation of their substantive due process rights and that Moving Parties are entitled to qualified immunity with respect to this claim.

#### 1. Adequacy of Pleading

"The substantive due process right to family integrity or to familial association is well established." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011). "A parent has a fundamental liberty interest in companionship with his or her child." *Id*. (internal quotation marks and citation omitted). The violation of the right to family integrity is subject to remedy under § 1983. *Id*. "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation." *Id*.

Plaintiffs allege that Moving Parties conspired with other officials to make allegations against Williams "stick," specifically, allegations that L.S. was sexually abused and that Williams failed to protect her children. FAC ¶ 359. Plaintiffs claim that in furtherance of that conspiracy, Moving Parties deliberately refrained from viewing the body-cam videos that contained

7

potentially exculpatory information, and that Estrada omitted known exculpatory information – that the children could not be qualified – in his Jurisdiction Report. FAC ¶¶ 296-97, 352-53, 359. According to Plaintiffs, Moving Parties' conduct "was the but-for cause of L.S. and Q.S.'s continued detention away from their mother," and Moving Parties intended their acts to injure Plaintiffs. FAC ¶ 297. These allegations describe official conduct that shocks the conscience, and that allegedly resulted in the continued separation of the family. The Court concludes that Plaintiffs' allegations are sufficient to state a claim for violation of Plaintiffs' substantive due process rights.

### 2. Qualified Immunity

The Court previously granted Moving Parties' motion to dismiss Claim 6 on the basis of qualified immunity, concluding that the original complaint did not allege facts against Moving Parties rising to the level of a constitutional violation. *See* Prior Dismissal Order at 12-13, ECF 41.

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dunn v. Castro*, 621 F.3d 1196, 1198-99 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In analyzing whether a government official is entitled to qualified immunity, the court looks at two distinct questions: (1) whether the facts alleged, construed in the light most favorable to the injured party, establish the violation of a constitutional right; and (2) whether the right was clearly established such that a reasonable government official would have known that his conduct was unlawful in the situation he confronted. *Id*. at 1199. Courts may exercise their discretion in deciding "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

In their briefs opposing both the earlier motion to dismiss and the present motion, Plaintiffs cited *Greene v. Camreta*, 588 F.3d 1011, 1035 (9th Cir. 2009), *vacated on other grounds*, 661 F.3d 1201 (9th Cir. 2011), which held that "the right to be free from deception in the presentation

United States District Court
Northern District of California

1 of evidence during a protective custody proceeding was clearly established." At the hearing on the present motion, Plaintiffs' counsel also cited *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1118 (9th Cir. 2017), which in turn quoted the above language from *Greene*.

The original complaint included allegations that Estrada was provided with twelve body-cam videos taken at the school on May 4, 2018, but that he viewed only one video before preparing his report for the juvenile court. Compl. ¶ 296-97, ECF 1. The complaint alleged that Estrada stopped viewing the body-cam videos at the direction of his supervisor, Duran. *See id.* The complaint also alleged that Estrada and Duran conspired with other officials to reach the conclusion that L.S. was sexually abused and Williams failed to protect her children. Compl. ¶ 358. The Court determined that those allegations were insufficient to show a constitutional violation under *Greene*. *See* Prior Dismissal Order at 13, ECF 41. As framed in the original complaint, Plaintiffs' allegations at most suggested that Moving Parties failed to undertake an adequate investigation before preparing the Jurisdiction Report. *See id.*

In their FAC, Plaintiffs repeat the allegations that Estrada was given more than twelve body-cam videos but stopped viewing after the first video at the direction of his supervisor, Duran. FAC ¶¶ 296-97. However, Plaintiffs have added new allegations that Estrada knew the children could not be qualified but deliberately omitted that information from the Jurisdiction Report. *See* FAC ¶¶ 352-53. Plaintiffs claim that Estrada learned the children could not be qualified from talking to other social workers and from the Salinas police reports. FAC ¶ 352. Plaintiffs also allege that both Duran and Estrada deliberately and intentionally failed to examine potentially exculpatory evidence provided to them, so that they could support the determinations desired by Monterey County and other defendants, that is, that Williams had failed to protect her children and that L.S. had been sexually abused. FAC ¶¶ 297, 352-53, 359.

The Court must accept these alleged facts as true and draw all reasonable inferences in Plaintiffs' favor. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013). Applying this standard, the Court concludes that Plaintiffs have alleged that Moving Parties engaged in "deception in the presentation of evidence during a protective custody proceeding." *Greene*, 588 F.3d 1035. The new facts give rise to reasonable inferences that Moving Parties conspired with

1 Monterey County and other defendants to reach a predetermined conclusion adverse to Williams, and that pursuant to that conspiracy Moving Parties deliberately refrained from viewing body-cam footage which might contain exculpatory information, and deliberately omitted from the Jurisdiction Report the known potentially exculpatory information that the children could not be qualified.

Moving Parties argue that the facts alleged in the FAC do not give rise to a reasonable inference of deception in the presentation of evidence to the juvenile court, but at most demonstrate that the investigation was inadequate. Moving Parties assert that "[p]erhaps it wasn't a complete investigation, but it was an investigation done in the time frame allowed." Reply at 3, ECF 55. That argument ignores Plaintiffs' allegations regarding the deliberate omission of the information that the children could not be qualified, and the deliberate choice not to view the body-cam footage so as to avoid seeing any potentially exculpatory evidence. While the Court agreed with Moving Parties in the first round of motion practice that Plaintiffs must allege more than inadequacy of the investigation, the Court disagrees with Moving Parties' position that Plaintiffs have failed to surmount that hurdle in the FAC. At the hearing, Moving Parties' counsel argued that Plaintiffs have not provided a sufficient factual basis for their allegations regarding Estrada's knowledge that the children could not be qualified and the reasons Estrada and Duran refrained from viewing the body-cam videos. The Court finds the facts alleged to be sufficient at the pleading stage.

The motion to dismiss is DENIED as to Claim 6. This ruling is without prejudice to Moving Parties filing a motion for summary judgment on the basis of qualified immunity.

**B.  Intentional Infliction of Emotional Distress (Claim 7)**

In Claim 7, Plaintiffs allege that the conduct of Moving Parties and other defendants was intended to and did cause Plaintiffs severe emotional distress. *See* FAC ¶¶ 401-02, ECF 43. Moving Parties argue that Plaintiffs have not stated a claim for IIED and that state law immunities apply to this claim.

**1.  Adequacy of Pleading**

The elements of an IIED claim are: "(1) extreme and outrageous conduct by the defendant

with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Sup. Ct.*, 54 Cal. 3d 868, 903 (1991) (internal quotation marks and citation omitted). The alleged conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id*. (internal quotation marks and citation omitted).

Plaintiffs' allegations regarding Moving Parties' participation in a conspiracy to make allegations "stick" against Williams satisfies the first element. The second and third elements are satisfied by Plaintiffs' allegation that Moving Parties' conduct was the "but-for cause of L.S. and Q.S.'s continued detention away from their mother," and that the separation of the family caused Plaintiffs severe emotional distress FAC ¶ 297, 402. Plaintiffs' allegations therefore are sufficient to state a claim for IIED.

### 2. State Law Immunities

The Court previously dismissed Claim 7 on the basis of state law immunities under California Government Code §§ 820.2 and 821.6. *See* Prior Dismissal Order at 8-10, ECF 41.

California courts have held broadly that "a social worker's decisions relating to, as here, the investigation of child abuse, removal of a minor, and instigation of dependency proceedings, are discretionary decisions subject to immunity under section 820.2, and/or prosecutorial or quasi-prosecutorial decisions subject to immunity under section 821.6." *Jacqueline T. v. Alameda Cty. Child Protective Servs.*, 155 Cal. App. 4th 456, 466 (2007), *as modified* (Oct. 4, 2007). "Such courts have reasoned that civil liability for a mistaken decision would place the courts in the unseemly position of making the county accountable in damages for a decisionmaking process delegated to it by statute." *Id*. (internal quotation marks, citation, and alteration omitted).

The immunities conferred by §§ 820.2 and 821.6 are limited by California Government Code § 820.21, which provides: "[T]he civil immunity of juvenile court social workers, child protection workers, and other public employees authorized to initiate or conduct investigations or proceedings . . . shall not extend to any of the following, if committed with malice: (1) Perjury[;] (2) Fabrication of evidence[;] (3) Failure to disclose known exculpatory evidence[;] (4) Obtaining

11

testimony by duress, . . . fraud, . . . or undue influence. . . ." Cal. Gov't Code § 820.21. The Court determined that the original complaint did not allege specific facts implicating § 820.21. *See* Prior Dismissal Order at 10. The Court noted that the complaint did not allege that Estrada knew the children had not been qualified or that lack of qualification was exculpatory information. *See id.* at 9. The Court concluded that, as framed in the original complaint, Plaintiffs' allegations at most suggested a failure to conduct an adequate investigation. *See id.*

As discussed above, the FAC contains new allegations that Estrada knew the children could not be qualified and deliberately omitted that potentially exculpatory information from the Jurisdiction Report. *See* FAC ¶¶ 352-53. The FAC also clarifies Plaintiffs' theory that Duran and Estrada deliberately refrained from viewing the body-cam video footage, which may have contained exculpatory information, so that they could omit any exculpatory information from the Jurisdiction Report and thereby support the adverse determination against Williams desired by Monterey County and others. *See* FAC ¶¶ 296-97, 352-53, 359. The Court finds that these facts, viewed liberally and with all reasonable inferences drawn in Plaintiffs' favor, are sufficient to show that Moving Parties' conduct may fall within Cal. Gov't Code § 820.21 and thus that the state law immunities may not apply.

The motion to dismiss is DENIED as to Claim 7. This ruling is without prejudice to Moving Parties filing a motion for summary judgment on the basis of state law immunities.

**IV.  ORDER**

The motion to dismiss is DENIED.

Defendants Estrada and Duran shall file answers no later than February 12, 2020.

Dated:  January 21, 2020

_____
BETH LABSON FREEMAN
United States District Judge