**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

MONIA WILLIAMS, et al.,

        Plaintiffs,

    v.

COUNTY OF MONTEREY, et al.,

        Defendants.

Case No. 19-cv-01811-BLF

**ORDER RE MOTIONS *IN LIMINE***

[Re: ECF 176, 177, 178, 179, 180, 183, 184, 185]

The Court held the Final Pretrial Conference in this case on May 6, 2021, at which time it issued oral rulings on the parties' Motions *in Limine*. Those rulings are summarized as follows:

## **PLAINTIFFS' MOTIONS *IN LIMINE***

**(1)**     **Plaintiffs' Motion *in Limine* No. 1 to Exclude Expert and Lay Opinion Testimony on the Existence of Exigent Circumstances and Lawfulness of Removal (ECF 184)**

Plaintiff moves to exclude all testimony of Defendants' experts and employees on the existence of exigent circumstances at the time minors L.S. and Q.S. were removed from the custody of Monia Williams ("Williams"). Exigent circumstances justifying removal exist where there is "specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse." *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000). "The existence of reasonable cause, and the related questions, are all questions of fact to be determined by the jury." *Id*. Plaintiffs argue that expert testimony would not aid the jury in this case, because no specialized knowledge is required to determine if exigency existed. Plaintiffs argue that lay testimony as to the reasonableness of the removal of L.S. and Q.S. likewise would be unhelpful and would confuse the jury. In particular, Plaintiffs seek to exclude testimony from social workers and other individuals that they subjectively believed removal of L.S. and Q.S. was reasonable.

United States District Court
Northern District of California

In opposition, Defendants contend that the motion is procedurally improper because it seeks to exclude the testimony of multiple expert witnesses in violation of the Court's Order Denying Plaintiffs' Administrative Motion, docketed at ECF 154 on March 10, 2021. That order provides that "each motion *in limine* may be used to challenge only a single expert." On the merits, Defendants argue that expert testimony and relevant lay testimony will aid the jury in determining whether exigent circumstances for removal existed in this case. Defendants also assert that Plaintiffs' motion is overbroad and vague, targeting *all* defense expert and lay witnesses without identifying any particular expert opinions or other testimony for exclusion.

While Defendants are correct that Plaintiffs' motion violates the Court's prior order, the Court addresses the merits of the motion for the sake of efficiency. Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" may testify if such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. An expert's "opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. In the present case, the jurors likely will be unfamiliar with reports of abuse made to social services and the removal of minors from parental custody. Appropriate expert testimony would provide context for the events giving rise to this lawsuit, thus helping the jury to understand the evidence. Under Rule 701, a lay witness may offer opinion testimony if it is "rationally based on the witness's perception," and is "helpful to clearly understanding the witness's testimony or to determining a fact in issue." It is likely that testimony of individual Defendants and other individuals at the scene will fall into this category.

The Court therefore concludes that expert testimony and lay testimony offered by Defendants may aid the jury to determine a fact in issue in this case, the existence of exigency. Plaintiffs suggest that such testimony will go beyond the permissible scope described above, and "invade[ ] the province of the jury." *United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993) (quotation marks and citation omitted). While that certainly is possible, it is impossible for the Court to forestall impermissible testimony in a vacuum. Without hearing a specific question put to a specific witness, the Court cannot offer an evidentiary ruling of the type sought by Plaintiffs here.

1          Plaintiffs' Motion *in Limine* No. 1 is DENIED without prejudice to Plaintiffs' ability to
2  make objections to particular questions or testimony at trial.

**(2)    Plaintiffs' Motion *in Limine* No. 2 to Exclude Testimony and Documents Re: Criminal Histories of Elijah Steen and Khalil Williams (ECF 183)**

Plaintiffs move to exclude testimony and documents relating to the criminal histories of Elijah Steen ("Elijah") and Khalil Williams ("Khalil"). Elijah is Monia Williams' adopted son and Khalil was under Williams' guardianship for many years. Both Elijah and Khalil lived in Williams' home during at least a portion of the period that Defendants believed L.S. was being sexually abused by Williams' brother, Pat. Defendants assert that Khalil also sexually abused L.S. during that period, that L.S. told Williams about the abuse, and Williams failed to take action to protect L.S.

Plaintiffs assert that Defendants will attempt to prejudice the jury against Williams by proffering evidence of criminal wrongdoing by Elijah and Khalil. Plaintiffs seek to exclude such evidence. The evidence in question includes the felony convictions of Elijah and Khalil arising out of a 2017 robbery the two committed in California; the felony conviction of Khalil arising out of a 2020 kidnapping of a minor in Nevada; and video of a 2019 incident at a Jack-in-the-Box during which Khalil chased L.S. through the restaurant until the manager allowed L.S. to wait in the office until police came. Plaintiffs contend that the criminal convictions of Elijah and Khalil, and the Jack-in-the-Box incident, are irrelevant to the issues in this case because they occurred after the 2018 removal of L.S. and Q.S. Plaintiffs also contend that evidence of the convictions and the Jack-in-the-Box incident would be prejudicial to Williams.

In opposition, Defendants argue that although Elijah and Khalil were not convicted of the 2017 robbery until after the removal of the children, Khalil was on bail for the offense and living with Williams at the time of the removal. Defendants assert that the 2017 offense involved the sex trafficking of a minor, and that Williams knew of the charges against Khalil but did not disclose them to law enforcement or the Juvenile Court even after L.S. indicated during a May 5, 2018 interview that Khalil had sexually abused her. Defendants assert that Williams' withholding of that information goes to her credibility, and that the criminal convictions go to the credibility of

3

Elijah and Khalil. Defendants also assert that the Jack-in-the-Box incident goes to the credibility of L.S.'s deposition testimony that she was never afraid of Khalil. Finally, Defendants contend that the Jack-in-the-Box evidence goes to Williams' credibility, as she told law enforcement in 2018 that Latonya was disabled and could not speak to police but Latonya spoke with police at the Jack-in-the-Box.

The Court finds that the evidence at issue is not directly relevant to the 2018 events giving rise to this lawsuit, and thus that the evidence is inadmissible during Defendants' case-in-chief. *See* Fed. R. Evid. 401 (defining relevance); 402 (excluding irrelevant evidence). However, the evidence may be used for impeachment under certain circumstances.

The criminal convictions of Elijah and Khalil are admissible to impeach them should they testify. Evidence of a conviction of a crime punishable by imprisonment for more than one year is admissible in a civil case to attack a witness's character for truthfulness, subject to Federal Rule of Evidence 403. *See* Fed. R. Evid. 609(a)(1)(A). Rule 403 provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Applying these standards, the Court would limit impeachment evidence to the elements of the crimes of conviction. While Defendants contend that the 2017 offense involved sex trafficking of a minor, and the 2020 offense involved attempted rape of a minor, the ultimate resolution of those cases was narrower. The Court finds that attempting to prove those additional circumstances would require a mini-trial within the trial, and that under Rule 403 the probative value of allowing such a mini-trial would be outweighed by the time that would be required and by the prejudicial effect on Plaintiffs. Further, the criminal convictions are not admissible to impeach Williams or her sister, Regina Mason, as the convictions occurred after the 2018 events giving rise to this lawsuit. The fact that Williams knew Khalil was on bail for the 2017 offense at the time of the 2018 events may be admissible to impeach her, depending on the scope of her testimony. The Court cannot offer a definite ruling unless and until Williams testifies.

The Jack-in-the-Box evidence may be admissible to impeach L.S. if she testifies that she

4

has never been afraid or Khalil or vouches for Khalil. However, the Court may determine that the probative value of this evidence is modest at best given the gap in time between the events giving rise to this lawsuit and the Jack-in-the-Box incident, and that any such probative value is outweighed by the undue consumption of time under Rule 403. The Court cannot offer a definitive ruling unless and until L.S. testifies. The Jack-in-the-Box evidence also may be admissible to impeach Williams with respect to her 2018 statements to law enforcement that Latonya could not speak to them, as the evidence demonstrates that Latonya spoke with law enforcement regarding the Jack-in-the-Box incident. Admissibility for impeachment will depend on the scope of Williams' testimony.

Plaintiffs' Motion *in Limine* No. 2 is GRANTED IN PART AND DENIED IN PART as set forth above. This ruling is without prejudice to Plaintiffs' ability to make objections to particular questions or testimony at trial.

**(3)** **Plaintiffs' Motion *in Limine* No. 3 to Exclude Testimony & Argument Re: Difficult Work/Decisions For Social Workers and/or Police Officers in Child Abuse Investigations (ECF 185)**

Plaintiffs seek to preclude any party or witness from testifying that investigations of child abuse and child sexual abuse are difficult for social workers and law enforcement officers, or that a decision to remove a child from parental custody is difficult. Plaintiffs contend that the purpose of such testimony would be to evoke the sympathy of the jury, and that any probative value of such testimony would be outweighed by its prejudicial effect under Federal Rule of Evidence 403. Plaintiffs likewise seek to preclude Defendants from making arguments regarding the difficulty of child abuse investigations and removal decisions.

In opposition, Defendants argue that the motion is impermissibly broad, as Plaintiffs have failed to define what particular evidence is the subject of the motion. Defendants also argue that the nature of child abuse investigations, and the difficulties such investigation pose to social workers and law enforcement officers, are relevant to questions of fact to be determined by the jury. Such questions include the reasonableness of the removal and whether Defendants are liable for punitive damages.

1    This motion is so broad that the Court is unable apply Federal Rules of Evidence 401
(defining relevance), 402 (excluding irrelevant evidence), and 403 (permitting exclusion when
probative value is outweighed by prejudicial effect or other factors) in any meaningful way.
While the jury certainly must be educated about the nature of Defendants' jobs and the
circumstances that give rise to lawful removal of minors from parental custody, Defendants may
not present evidence for the sole purpose of playing on jurors' sympathy.  The Court cannot
determine on what side of this line any particular testimony may fall until it is offered at trial.

Plaintiffs' Motion *in Limine* No. 3 is DENIED.  This ruling is without prejudice to Plaintiffs' ability to make objections to particular questions or testimony at trial.

**DEFENDANTS' MOTIONS *IN LIMINE***

**(1)    Defendants' Motion *in Limine* No. 1 Re Witnesses and Evidence Not Disclosed (ECF 176)**

Defendants move to preclude Plaintiffs from introducing witnesses and evidence not disclosed in compliance with Plaintiffs' discovery obligations.  In particular, Defendants seek exclusion of four witnesses:  Rinnu Chacko, Susan Gehrig, Dr. Peter Marshall, and Mel Mason.  Defendants also seek to exclude any other witness or evidence not properly disclosed.

In opposition, Plaintiffs clarify that although Chacko, Gehrig, and Marshall were included in early drafts of Plaintiffs' witness list, those individuals were not included in Plaintiffs' final witness list submitted with the parties' Joint Pretrial Statement.  *See* Pls.'s Final Witness List, ECF 181-2.  Plaintiffs also assert that Mel Mason was disclosed in Plaintiffs' Fourth Supplemental Rule 26 Disclosure served on December 7, 2020, before the close of fact discovery on December 30, 2020.  *See* Pls.'s Fourth Supp. Disclosure, ECF 195-2.

Given that Chacko, Gehrig, and Marshall were not included in Plaintiffs' final witness list, and Mel Mason was disclosed prior to the close of fact discovery, there does not appear to be a basis for granting Defendants' motion.  Defendants argue that Plaintiffs could have disclosed Mel Mason long before they did so, and that by the time disclosure occurred, it was too late for Plaintiffs to depose him before the fact discovery cut-off.  That argument does not provide a basis for exclusion, as Mel Mason properly was included in a timely supplemental disclosure.  *See* Fed.

1    R. Civ. P. 26(e). As observed by the Court at the hearing, Defendants could have sought relief
2    from the discovery cut-off to take Mel Mason's deposition, but they did not do so. Defendants'
3    speculation that Plaintiffs may introduce unspecified undisclosed witnesses or evidence at trial is
4    too vague to provide a basis for a ruling.

Defendants' Motion *in Limine* No. 1 is DENIED. This ruling is without prejudice to Defendants' ability to make objections to particular witnesses or evidence at trial.

**(2)   Defendants' Motion *In Limine* No. 2 to Exclude Evidence Regarding Inconsistencies in the Police Report (ECF 177)**

Defendants move to exclude evidence related to alleged inconsistencies between the police reports regarding the events giving rise to this lawsuit and the videos taken by officers' body cameras. Defendants contend that any such inconsistencies would relate only to Claim 6 for judicial deception, as to which summary judgment has been granted for Defendants. Although Plaintiffs have filed a motion for reconsideration of that ruling with respect to certain of the County social workers, Plaintiffs have not sought reconsideration of the ruling with respect to any of the City law enforcement officers. Defendants assert that inconsistencies in the police reports are irrelevant to Plaintiffs' remaining claims, which relate to the decision to remove L.S. and Q.S., and thus are subject to exclusion under Federal Rules of Evidence 401 and 402. Defendants also assert that any probative value such inconsistencies might have would be outweighed by the prejudicial effect on Defendants and potential jury confusion.

In opposition, Plaintiffs argue that inconsistencies between the police reports and the officers' body camera videos are relevant to the issue of liability on Plaintiffs' remaining claims for a number of reasons. Plaintiffs contend that the police reports provide insight into the events of May 4, 2018 and the decision to remove the children. Such insight could be relevant to a determination whether Defendants are entitled to qualified immunity. Plaintiffs also point out that discrepancies between the police reports and the actual events could constitute proof of bias or misconduct that would support their punitive damages claims. Thus, Plaintiffs argue, the alleged inconsistencies are relevant and admissible under Rules 401 and 402, and the probative value of such inconsistencies outweighs any competing interests under Rule 403.

The Court finds that inconsistencies between the police reports and the body camera videos would be relevant to issues of liability on the remaining claims, particularly with respect to Plaintiffs' claims of punitive damages against all Defendants. The juxtaposition of the police reports and the body camera videos also could provide a window into the events of May 4, 2018 that will aid the jury in understanding those events. The Court finds that inconsistencies in the police reports are relevant and admissible under Rules 401 and 402, and that the probative value outweighs any prejudicial effect under Rule 403.

Defendants' Motion *in Limine* No. 2 is DENIED. This ruling is without prejudice to Defendants' ability to make appropriate objections at trial.

**(3)  Defendants' Motion *In Limine* No. 3 to Exclude Melinda Murphy as an Expert Witness (ECF 178)**

Defendants move to exclude Melinda Murphy, who was disclosed by Plaintiffs as a rebuttal expert to counter the opinions of Defendants' expert Heidi Staples. Defendants contend that Murphy's expert report goes far beyond the scope of a rebuttal witness, and they seek to exclude her testimony at trial altogether, and in particular to exclude her from Plaintiffs' case-in-chief. Defendants argue that Plaintiffs impermissibly seek to use Murphy's expert opinion to meet Plaintiffs' burden to prove lack of exigent circumstances despite the fact that Murphy was not timely disclosed as an expert.

In opposition, Plaintiffs dispute that they bear the burden to prove lack of exigent circumstances, asserting "that is the 'taker' burden." Pls.' Opp. to MIL 3 at 2, ECF 190. Plaintiffs also argue that they do not need an expert to prove lack of exigency. Finally, Plaintiffs argue that Murphy's report properly is offered to rebut Staples' report.

Plaintiffs are incorrect regarding the burden of proof on exigency at trial. In a civil action under § 1983, the plaintiffs at all times bear the ultimate burden of proving to the jury that their constitutional rights were violated. *See Mueller v. Auker*, 700 F.3d 1180, 1193 (9th Cir. 2012) ("[I]n a claim brought under 42 U.S.C. § 1983 'the plaintiff carries the ultimate burden of establishing each element of his or her claim.'" (quoting *Pavao v. Pagay*, 307 F.3d 915, 919 (9th Cir. 2002)); *Larez v. Holcomb*, 16 F.3d 1513, 1517 (9th Cir. 1994) ("[B]ecause Larez's action was

8

a § 1983 civil action, Larez at all times had the ultimate burden of proving to the jury that she had been seized unreasonably in violation of the Fourth Amendment."). In *Mueller*, parents brought a § 1983 suit against law enforcement officers who removed their infant child to secure testing and treatment advised by physicians. On appeal, the Muellers argued that the jury instructions erroneously had put the burden on them to show an absence of imminent danger to their child. *See Mueller*, 700 F.3d at 1193. The Ninth Circuit held that "[b]ecause the Muellers' claims arise under section 1983 the jury instructions properly placed the burden on the Muellers." *Id.*

However, Defendants have not presented any authority showing that Plaintiffs are required to present expert testimony in their case-in-chief to meet that burden. Plaintiffs may seek to meet their burden to prove lack of exigency by other means, and may seek to rebut experts proffered by Defendants with properly disclosed rebuttal experts. Absent other direction from the court, a rebuttal report shall be filed "within 30 days after the disclosure" of the evidence that the expert is assigned to rebut. Fed. R. Civ. P. 26(a)(2)(C). Defendants do not contend that Plaintiffs failed to comply with timeliness requirements for rebuttal experts. Rather, they contend that Murphy's opinions go beyond the scope of rebuttal and that she was disclosed beyond the deadline for disclosure of affirmative experts. Having reviewed Murphy's expert report, the Court is satisfied that Murphy will be able to offer rebuttal testimony at trial. She may not testify during Plaintiffs' case-in-chief, but she may offer testimony to rebut the opinions of Defendants' expert, Staples. If Defendants believe that any testimony elicited from or offered by Murphy goes beyond the scope of rebuttal, Defendants are free to make objections. Plaintiffs are reminded that they must reserve time for any rebuttal evidence.

Defendants' Motion *in Limine* No. 3 is GRANTED IN PART AND DENIED IN PART. This ruling is without prejudice to Defendants' ability to object to Murphy's testimony on the basis that it goes beyond rebuttal.

**(4) Defendants' Motion *in Limine* No. 4 to Exclude Trish O'Neill as an Expert Witness for Failure to Comply with Discovery Obligations (ECF 179)**

Defendants move to exclude Trish O'Neill, who was disclosed by Plaintiffs as a rebuttal expert to counter the opinions of Defendants' expert Nancy Nelson. Defendants contend that

Nelson's expert report goes far beyond the scope of a rebuttal witness, and they seek to exclude her testimony at trial altogether, and in particular to exclude her from Plaintiffs' case-in-chief. Defendants argue that Plaintiffs impermissibly seek to use Nelson's expert opinion to meet Plaintiffs' burden to prove liability at trial.

In opposition, Plaintiffs again raise a dispute regarding their burden of proof at trial. They also argue that they do not need an expert to prove liability. Finally, Plaintiffs that O'Neill properly was disclosed to rebut Defendants' expert Nelson.

For the reasons discussed above, the Court finds that Plaintiffs bear the burden of proving each element of their civil rights claims to the jury. *See Mueller v. Auker*, 700 F.3d at 1193. Defendants have not presented any authority that Plaintiffs must meet that burden through expert testimony. Thus, while Plaintiffs may not present O'Neill's testimony in their case-in-chief, Plaintiffs may present O'Neill's testimony in rebuttal to Nelson. Having reviewed O'Neill's report, the Court is satisfied that she will be able to offer at least some proper rebuttal testimony at trial. If Defendants believe that any testimony elicited from or offered by O'Neill goes beyond the scope of rebuttal, Defendants are free to make objections.

Defendants' Motion *in Limine* No. 4 is GRANTED IN PART AND DENIED IN PART. This ruling is without prejudice to Defendants' ability to object to O'Neill's testimony on the basis that it goes beyond rebuttal.

**(5) Defendants' Motion *in Limine* No. 5 to Exclude All Evidence of Improperly Claimed Damages (ECF 180)**

Defendants seek to exclude all evidence of special damages, and all evidence of any damages following the Juvenile Court's order of detention dated May 9, 2018. Defendants contend that Plaintiffs have not provided computation of any special damages during discovery as required under Federal Rule of Civil Procedure 26. Defendants further contend that to the extent Plaintiffs were able to prove any damages flowing from the initial allegedly improper removal of L.S. and Q.S., such damages are cut off by the Juvenile Court's detention order following an initial hearing.

In opposition, Plaintiffs assert that they have provided Defendants with a breakdown of the

1  special damages claimed in this case, including attorneys' fees and costs related to representation
2  in the juvenile dependency case and estimated future therapy and neuropsychological treatment
3  costs for Q.S. Plaintiffs also dispute that the May 9, 2018 detention hearing operates to cut off
4  damages in this case.

5  Federal Rule of Civil Procedure 26 requires that initial disclosures include "a computation
6  of each category of damages claimed by the disclosing party – who must also make available for
7  inspection and copying as under Rule 34 the documents or other evidentiary material, unless
8  privileged or protected from disclosure, on which each computation is based, including materials
9  bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). If a party
10 fails to provide such information through initial disclosures or supplementation, the party may not
11 use such information at trial "unless the failure was substantially justified or is harmless." Fed. R.
12 Civ. P. 37(c)(1). Defendants contend that Plaintiffs have failed to provide any computation of
13 special damages and therefore that they should be precluded from seeking special damages at trial.
14 The Court finds that Plaintiffs satisfied their Rule 26 obligations to provide computation of
15 damages in their Fourth Supplemental Rule 26 Disclosures and the expert report of Dr. Caroline
16 Mok. Accordingly, the portion of the motion seeking to preclude special damages for failure to
17 comply with Rule 26 will be denied.

18 With respect to the more difficult issue, whether the Juvenile Court's detention order cuts
19 off Plaintiffs' damages, the Court finds guidance in *Watson v. City of San Jose*, 800 F.3d 1135
20 (9th Cir. 2015). In that case, the plaintiffs asserted constitutional violations arising from the
21 removal of minor children without a required warrant or exigent circumstances. *See Watson*, 800
22 F.3d at 1137-38. The children were removed on June 29, 2005 and June 30, 2005, and on July 5,
23 2005, the juvenile court made a determination that the children should remain detained for their
24 welfare. *See id.* at 1137. After a jury awarded $3,250,000 in damages, the district court granted
25 the defendants' motion for a new trial, reasoning that the jury instructions on damages in the first
26 trial were inadequate. *See id.* at 1138. Specifically, the district court failed to apply the Supreme
27 Court's decision in *Carey v. Piphus*, 435 U.S. 247 (1948), when formulating the jury instructions
28 in the first trial. *See Watson*, 800 F.3d at 1139. In *Carey*, students claimed that they had been

11

suspended from school without procedural due process and on that basis sued the school board. *See Carey*, 435 U.S. at 248. The Supreme Court held that where a deprivation is justified, but the procedures are deficient, damages flowing from the justified deprivation are not compensable under § 1983. *See id*. at 263-64. Thus, damages flowing from the students' justified suspension were not compensable under § 1983, but mental and emotional distress damages flowing from the constitutional deprivation – denial of due process – were compensable under § 1983.

The district court in *Watson* concluded that the jury instructions in the first trial did not properly indicate that damages could be awarded only for the unconstitutional procedure in removing the children without a warrant or exigent circumstances, and not for the lengthy separation of the family based on the juvenile court's order. *See Watson*, 800 F.3d at 1140. In the second trial, the district court modified its instructions to reflect the holding of *Carey*. *Id*. The jury in the second trial awarded $210,002 in compensatory damages and no punitive damages. *See id.* On the plaintiffs' appeal, the Ninth Circuit agreed with the district court that the first jury improperly awarded damages for the entire period of separation of the children from their parents, not only for the period between the warrantless removal and the juvenile court's detention order. *See id.* The Ninth Circuit reasoned that, "Even if the jury concluded that the separation prior to July 5 was not justified, the amount awarded by the first jury did not reasonably reflect the actual injury suffered as a result of a separation of five or six days, given that the separation for the 17 months that followed was lawful and would have occurred anyway." *Id*. The Ninth Circuit also rejected the plaintiffs' argument that *Carey*, involving a school suspension, did not apply to the facts of *Watson*, involving a warrantless removal of children. *See id.* at 1142.

In this Court's view, the *Watson* court's application of *Carey* is appropriate here. Based on *Carey* and *Watson*, this Court concludes that Plaintiffs may recover all damage flowing from the initial removal of L.S. and Q.S., if the removal is shown to have violated Plaintiffs' constitutional rights, but that they may not recover damages flowing from the Juvenile Court's detention decision. Although this Court initially was inclined to find that the relevant juvenile court decision was the detention order issued on May 9, 2018, Plaintiffs' counsel argued that because the May 9, 2018 order was based on a *prima facie* showing rather than any independent findings,

12

1  it should not cut off damages flowing from the allegedly unconstitutional removal.  The Court

2  finds that argument persuasive, and therefore determines that the relevant Juvenile Court order

3  was the order issued on May 14, 2018 after a contested detention hearing.  Plaintiffs may not

4  recover damages flowing from the May 14, 2018 detention order.  Plaintiffs' counsel argued that

5  injury inflicted during the initial unlawful removal may extend beyond May 14, 2018, analogizing

6  to a broken arm that causes injury long beyond the date of the break.  Plaintiffs may attempt to

7  prove that emotional distress or other injuries caused by the initial removal extended beyond the

8  May 14, 2018 date, as distinct from injuries caused by the Juvenile Court's May 14, 2018

9  detention order and the prolonged period of detention after that order.

The Court declines Defendants' invitation to limit damages to the period of time it would have taken to obtain a warrant, because it is not apparent on this record that Defendants would have been able to obtain a warrant.  Plaintiffs' position is that removal was unjustified and that no warrant would have issued on May 4, 2018.  Defendants may attempt to prove to the jury that a warrant would have issued within a number of hours and therefore that damages (if any) should be cut off at that time.  The Court cannot make that finding as a matter of law, however.

Defendants' Motion *in Limine* No. 5 is DENIED as to the portion of the motion asserting failure to disclose a computation of damages in compliance with Rule 26.  The motion is GRANTED IN PART as to the portion of the motion seeking to preclude damages flowing from the Juvenile Court's orders rather than the initial warrantless removal.  The Court finds that Plaintiffs may not seek damages flowing from the children's detention after May 14, 2018, the date of the Juvenile Court's detention order following contested proceedings.

**IT IS SO ORDERED.**

Dated: May 17, 2021

_____
BETH LABSON FREEMAN
United States District Judge