United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MONIA WILLIAMS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY, et al.,<br><br>Defendants. | Case No. 19-cv-01811-BLF<br><br>**ORDER DENYING DEFENDANTS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE BREIF RE *SUA SPONTE* RECONSIDERATION; AND GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION**<br><br>[Re: ECF 175, 203] |

Before the Court is Plaintiffs' motion for reconsideration ("Recon Motion") of the Court's Order Granting in Part and Denying in Part Defendants' Motions for Summary Judgment ("MSJ Order"). *See* Recon Mot., ECF 175; MSJ Order, ECF 171.[1] Also before the Court is Defendants' administrative motion to set a briefing schedule regarding the propriety of the Court granting reconsideration under its inherent authority to modify its own orders *sua sponte*. *See* Admin. Mot., ECF 203.

For the reasons discussed below, Defendants' administrative motion is DENIED and Plaintiffs' Recon Motion is GRANTED.

---

[1] The MSJ Order filed at ECF 171 on April 12, 2021 is the public version of the sealed MSJ Order filed at ECF 156 on March 26, 2021.

## I. BACKGROUND

On March 26, 2021, the Court issued its MSJ Order, granting in part and denying in part Defendants' motions for summary judgment. As relevant here, the Court granted Defendants' motions for summary judgment on Claim 6 and narrowed Plaintiffs' *Monell* claims to failure to train. *See* MSJ Order at 34, ECF 171.

On April 14, 2021, Plaintiffs filed a motion for leave ("Motion for Leave") to seek reconsideration of the MSJ Order. *See* Motion for Leave, ECF 173. The Court issued an order granting the Motion for Leave, directing Plaintiffs to file their Recon Motion, setting a deadline for Defendants' opposition, and indicating that the Recon Motion would be submitted without oral argument upon the filing of the opposition. *See* Order Granting Mot. for Leave, ECF 174. Plaintiffs filed their Recon Motion on April 21, 2021, asking the Court to reinstate Claim 6 as to County Defendants Linda Castillo, Justin Ricks, and Chelsea Chacon, and to expand the *Monell* claims to encompass both failure to train and a practice or custom of unlawful warrantless removal of children. *See* Recon Mot., ECF 175. Defendants filed opposition to the Recon Motion on April 28, 2021. *See* Opp., ECF 186.

After reviewing the Recon Motion and the opposition thereto, the Court determined that Plaintiffs have not satisfied the requirements for reconsideration set forth in Civil Local Rule 7-9(b), because they have failed to identify (1) a material difference in fact or law from that presented to the Court prior to issuance of the order that is the subject of the motion for reconsideration; (2) new material facts or a change of law occurring after issuance of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before issuance of such order. Civ. L.R. 7-9(b). Instead, Plaintiffs have raised new arguments based on the facts originally presented in opposition to summary judgment, or perhaps Plaintiffs have simply clarified their prior arguments – the summary judgment briefing was almost entirely incoherent, as it was written in a stream-of-consciousness style that was hard to follow. Plaintiffs "cannot advance a new summary judgment argument – based on old facts – through the guise of a motion for reconsideration" *Cramton v. Grabbagreen Franchising LLC*, No. CV-17-04663-PHX-DWL, 2020 WL 85108, at *2 (D. Ariz. Jan. 7, 2020).

2

After evaluating Plaintiffs' theories as presented cogently for the first time on reconsideration, however, the Court concluded that justice may require it to consider Plaintiffs' substantive arguments on reconsideration despite Plaintiffs' failure to satisfy the procedural requirements of Civil Local Rule 7-9. Because Defendants' opposition to the Recon Motion addresses only procedural grounds for denial, the Court issued a separate order advising the parties that it would conduct a hearing on the Recon Motion during the Final Pretrial Conference on May 6, 2021. *See Order*, ECF 199. The Court's scheduling order advised all counsel that the Court would "address several discrete issues raised by Plaintiffs' Motion for Reconsideration at the Final Pretrial Conference set on May 6, 2021," and indicated that "Counsel shall be prepared to respond to the Court's questions." *Id.* At the Final Pretrial Conference, the Court informed the parties that although Plaintiffs had not satisfied the procedural requirements for reconsideration under Civil Local Rule 7-9, the Court was considering granting reconsideration under its inherent authority to correct its own orders *sua sponte*. The Court then heard oral argument from all parties on the substantive issues raised by Plaintiffs' Recon Motion. The Court took the Recon Motion under submission at the close of the Final Pretrial Conference.

On May 11, 2021, Defendants filed an administrative motion asking for leave to file a brief as to whether the Court should grant reconsideration under its inherent authority to modify its prejudgment rulings *sua sponte*. Plaintiffs filed opposition to the administrative motion on May 12, 2021.

**II.   DEFENDANTS' ADMINISTRATIVE MOTION**

The law is clear that the Court has inherent authority to modify its own order at any time before judgment. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001) ("[A] district court's authority to rescind an interlocutory order over which it has jurisdiction is an inherent power rooted firmly in the common law."). While Defendants do not dispute that authority, Defendants argue that they were not given fair notice that the Court might exercise that authority *sua sponte* and they request leave to brief the issue of whether the Court should do so. Defendants cite *Day v. McDonough*, 547 U.S. 198, 210 (2006), for the proposition that "before acting on its own initiative, a court must accord the parties fair notice and

3

an opportunity to present their positions." In *Day*, the issue was whether district courts may consider *sua sponte* the timeliness of a state prisoner's habeas petition. *See id.* The Supreme Court held that courts may do so, but that they must give the petitioner notice that the petition may be dismissed on timeliness grounds not raised by the state, and "a fair opportunity to show why the limitation period should not yield dismissal of the petition." *Id.*

In the present case, Defendants were given notice of Plaintiffs' substantive arguments in the Recon Motion. Defendants responded with procedural arguments only, choosing not to address the substantive issues raised by Plaintiffs at all. The Court signaled its concern regarding the issues raised in the Recon Motion by setting the matter for oral argument after previously submitting it on the papers, and by specifically directing counsel to be prepared to answer questions. The Court allowed all parties to present oral argument regarding the issues raised in the Recon Motion.

Under these circumstances, the Court finds that Defendants have been afforded a fair opportunity to respond to the substantive issues upon which the Court finds that reconsideration is warranted. Those issues were briefed thoroughly in Plaintiffs' Recon Motion and in the County's motion for summary judgment. The parties were advised that the Court had concerns about the issues raised in the Recon Motion, and the Court set the matter for a hearing at which all parties were permitted to present oral argument. This case is unlike *Day*, or any of the other cases cited by Defendants, that preclude a court from *sua sponte* granting relief without notice to the parties. The Court's exercise of its authority here is *sua sponte* only in the sense that the Court's correction of its order is pursuant to its inherent authority rather than Civil Local Rule 7-9. However, the substantive relief granted by the Court is that requested and briefed by Plaintiffs in their Recon Motion and discussed at length during the Final Pretrial Conference.

Defendants' administrative motion to brief the issue of whether the Court should grant *sua sponte* relief from its MSJ Order is DENIED.

### III. PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs seek reconsideration of two aspects of the Court's MSJ Order. The first relates to Claim 6 of the operative first amended complaint ("FAC"), which alleges that Defendants

4

violated Plaintiffs' constitutional rights by submitting documents containing fraudulent statements and omissions to the Juvenile Dependency Court. FAC ¶¶ 392-98. The Court granted summary judgment on Claim 6 for all Defendants. *See* MSJ Order at 23, 25, ECF 171. Plaintiffs seek reconsideration of that ruling with respect to County Defendants Linda Castillo, Justin Ricks, and Chelsea Chacon.

The second aspect of the Court's MSJ Order challenged by Plaintiffs relates to the scope of Plaintiffs' *Monell* claims. The MSJ Order states as follows: "At the hearing, the Court indicated that the only potentially viable *Monell* claim it could glean from the FAC and briefing is a claim for failure to train, and Plaintiffs' counsel confirmed that the *Monell* claims are limited to failure to train." MSJ Order at 26, ECF 171. The transcript of the hearing reflects that Plaintiffs' counsel, Robert Powell, agreed that Plaintiffs' *Monell* claims are limited to failure to train. *See* MSJ Hrg. Tr. 47:10-19, ECF 155. Plaintiffs now contend that Mr. Powell immediately retracted his agreement, although no such retraction was captured by the court reporter. Plaintiffs seek reconsideration of the Court's MSJ Order limiting their *Monell* claims to failure to train, requesting that they be allowed to proceed to trial on *Monell* claims encompassing both inadequate training and a practice or custom of unlawful warrantless removal of children.

### A. Legal Standard

Plaintiffs bring their motion for reconsideration under Federal Rule of Civil Procedure 60(b)(1), which provides that: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . ." Fed. R. Civ. P. 60(b)(1). Rule 60(b)(1) is not limited to mistake or inadvertence by a litigant. *See Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999). A district court may correct its own mistake or inadvertence under Rule 60(b)(1). *See id.* A Rule 60(b)(1) motion must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c).

In this district, a motion for reconsideration must satisfy additional requirements, set forth in Civil Local Rule 7-9(b). Specifically, reconsideration may be sought only if one of the following circumstances exists: (1) a material difference in fact or law from that presented to the

5

1 Court prior to issuance of the order that is the subject of the motion for reconsideration; (2) new material facts or a change of law occurring after issuance of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before issuance of such order. Civ. L.R. 7-9(b).

### B.     Claim 6 – Castillo, Ricks, and Chacon

Claim 6 asserts that Defendants violated all Plaintiffs' Fourteenth Amendment substantive due process rights to familial association, and the minor Plaintiffs' Fourth Amendment rights to be free from unreasonable seizures, by submitting documents containing material misrepresentations and omissions to the Juvenile Dependency Court. Specifically, Claim 6 alleges that "the continued separation of the Plaintiff family members after the initial warrantless removal of the minor Plaintiffs from the care, custody, and control of Monia" was "accomplished through the use of fraud, misrepresentation, and omission of material facts and evidence in the Petition filed under oath to commence the juvenile matter, and the reports written thereafter." FAC ¶ 392, ECF 43.

#### 1.     Court's Ruling

In evaluating the County Defendants' motion for summary judgment on Claim 6, the Court cited *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017), for the well-established principle that the Fourteenth and Fourth Amendments protect parents and children "against deliberate government use of perjured testimony and fabricated evidence in the dependency court proceeding designed to rupture" the familial relationship. *See* MSJ Order at 20, ECF 171.

The Court noted that the majority of the Defendants were not involved in drafting the Petition to the Juvenile Dependency Court. *See* MSJ Order at 21. Chacon alone drafted the Petition, relying on the delivered service logs ("DSLs") containing investigation notes of other social workers, including Castillo and Ricks. *See id.* The County Defendants pointed to an absence of record evidence that Chacon had any reason to doubt the reliability of the DSLs. *See id.* The Court found that sufficient to meet the County Defendants' initial burden on summary judgment, thus shifting the burden to Plaintiffs to present evidence from which a reasonable trier of fact could find Chacon liable. *See id.* The Court concluded that Plaintiffs failed to meet that burden, rejecting Plaintiffs' argument that Chacon may be held liable on the basis that she signed

the Petition under penalty of perjury when she admittedly relied on the DSLs and did not have personal knowledge of the facts set forth therein. *See id.* The Court also determined that Chacon could not be held liable for omitting facts from the Petition, as there was no evidence that such omissions went beyond mere carelessness to the level of a constitutional violation. *See id.*

With respect to Castillo and Ricks, because they were not involved in submission of the Petition to the Juvenile Dependency Court, the Court understood Plaintiffs to be asserting a claim of deliberate fabrication of evidence during the investigation of the alleged sexual abuse. *See* MSJ Order at 21. The Court relied on *Gausvik v. Perez*, 345 F.3d 813, 815-17 (9th Cir. 2003), in which Gausvik asserted § 1983 claims against a law enforcement officer, Perez, for constitutional due process violations grounded in Perez's alleged fabrication of evidence during an investigation of Gausvik for alleged sexual abuse of his children. *See* MSJ Order at 21-23. The Ninth Circuit held that liability could not be premised on Perez's overbearing tactics in interviewing the children absent "independent evidence that Perez knew or should have known his interview tactics would yield false information." *Gausvik*, 345 F.3d at 817. The Ninth Circuit also determined that misstatements in Perez's probable cause affidavit – *e.g.*, that the children had tested "positive" for sexual abuse when the tests were merely consistent with sexual abuse – showed at most carelessness or inaccuracy, but did not establish deliberate fabrication. *See id.* Applying *Gausvik*, this Court concluded that Plaintiffs' challenges to the social workers' interview techniques were insufficient to create a material issue of fact, and that the alleged inaccuracies in the social workers' investigation notes were similar to those found insufficient to establish a constitutional violation in *Gausvik*. *See* MSJ Order at 23.

### 2. Plaintiffs' Challenges

Plaintiffs contend that the Court misapprehended their theory of liability against Castillo and Ricks, as Plaintiffs do not assert a claim for deliberate fabrication of evidence through oppressive interview techniques or other conduct governed by *Gausvik*. Plaintiffs clarify that their theory is that Castillo and Ricks put forth false statements and omitted exculpatory facts in the DSLs that they knew would be used to prepare the Petition submitted to the Juvenile Dependency Court. Plaintiffs argue that to prevail on this theory, they need prove only that Castillo and Ricks

7

acted with "reckless disregard" of the truth. Plaintiffs cite the Ninth Circuit's recent decision in *Benavidez*, which post-dates the Court's MSJ Order but summarizes pre-existing law regarding judicial deception in dependency proceedings. *See Benavidez v. Cty. of San Diego*, No. 19-55274, 2021 WL 1343530, at *8 (9th Cir. Apr. 12, 2021). In that case, the Ninth Circuit stated that, "To successfully allege a violation of the constitutional right to be free from judicial deception, the Benavidezes must make out a claim that includes (1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Id.* Plaintiffs contend this standard applies here.

With respect to Chacon, Plaintiffs reiterate their argument that Chacon may be held liable for any misrepresentations or omissions contained in the Petition because she signed the Petition under penalty of perjury when she admittedly did not have personal knowledge of the facts set forth therein. According to Plaintiffs, signing the Petition without personal knowledge constitutes culpable "reckless disregard" for the truth of its contents. Plaintiffs also argue that Chacon should have attributed the source of statements included in the Petition.

### 3. Defendants' Response

Defendants' opposition brief is limited to procedural arguments that Plaintiffs have not satisfied the requirements of Civil Local Rule 7-9(b). In particular, Defendants argue that *Benavidez* does not constitute new law and is irrelevant because it addresses the pleading standards for judicial deception, which Defendants contend are irrelevant to the Court's summary judgment ruling. Defendants also argue that Plaintiffs simply reiterate arguments they presented in opposition to summary judgment, which does not provide a basis for reconsideration.

At the Final Pretrial Conference, Defendants argued that Plaintiffs have not identified a single misrepresentation by the County Defendants that was material to Juvenile Dependency Court's detention orders.

### 4. Analysis

The Court agrees with Defendants that Plaintiffs' motion for reconsideration does not satisfy the requirements of Civil Local Rule 7-9(b). However, now that Plaintiffs have provided a cogent articulation of their theories of liability, the Court finds it appropriate to reconsider its prior

8

ruling to determine whether disputed facts preclude summary judgment under those theories. The Court relies on its inherent authority to modify its own order at any time before judgment. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001) ("[A] district court's authority to rescind an interlocutory order over which it has jurisdiction is an inherent power rooted firmly in the common law.").

With respect to Castillo and Ricks, there is no dispute that they did not submit documents directly to the Juvenile Dependency Court. Accordingly, their conduct does not fall squarely within *Benevidez, Hardwick*, and other cases cited by Plaintiffs involving claims arising out of the defendant social worker's direct communication with the court. *See, e.g., Benevidez*, 2021 WL 1343530, at *8 (claim for judicial deception stated against defendant social workers who allegedly omitted material facts in detention report and request for medical examination of children); *Hardwick*, 844 F.3d at 118-19 (claim for constitutional violations supported by evidence that social workers maliciously used perjured testimony and fabricated evidence in juvenile dependency proceedings).

The Court now understands Plaintiffs to be asserting a juvenile deception claim against Castillo and Ricks based on the theory that they included material misstatements and omissions in their DSLs, knowing that the DSLs would be relied on in drafting of the Petition submitted to the Juvenile Dependency Court, and thus that their material misstatements and omissions would be presented to the Juvenile Dependency Court. In the Court's view, this theory represents an extension of the cases addressing judicial deception in the child dependency setting. However, the Court finds this extension of the law to be reasonable, because it is clear on this record that Castillo and Ricks knew that the DSLs containing their investigative notes would be used to prepare the Petition. Castillo and Ricks do not dispute that they knew their investigative notes would be used to prepare the filings in the Juvenile Dependency Court. Accordingly, the Court finds that liability against Castillo and Ricks may be established by evidence that they included in the DSLs (1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) incorporated into the Petition and was material to the judicial detention decision. *See Benavidez*, 2021 WL 1343530, at *8.

9

Before evaluating whether Plaintiffs' clarification of their theory warrants reconsideration, the Court addresses Plaintiffs' assertion that the MSJ Order erroneously held that reckless disregard is insufficient to establish a constitutional violation. Plaintiffs mischaracterize the MSJ Order. The Court did not discuss the viability of a claim for judicial deception based on reckless disregard, and in fact it did not use the phrase "reckless disregard" in its MSJ Order at all. Because it understood Plaintiffs to be asserting a claim of deliberate fabrication governed by *Gausvik*, the Court limited its discussion to the standard set forth in *Gausvik*. Now that Plaintiffs have cogently articulated their theory of liability, the Court concludes that under *Benavidez*, *Hardwick,* and the other cases cited by Plaintiffs, Plaintiffs may establish liability for judicial deception based on material misrepresentations or omissions, made with reckless disregard for the truth, that were material to the Juvenile Dependency Court's decision.

The Court finds that Plaintiffs have presented sufficient evidence from which a reasonable trier of fact could conclude that the DSLs prepared by Castillo and Ricks contained material misstatements and omissions, made with reckless disregard as to the truth, that were incorporated into the Petition submitted to the Juvenile Dependency Court and were material to the detention decision. That evidence includes, but is not limited to, the following.

### a. Castillo

Castillo reported in the DSL that when she interviewed Q.S. on May 4, 2018, Q.S. said he had told his mother that L.S. and Pat were doing "licks" and that his mother said not to tell anyone. *See* Pls.' Joint Exhibits, Exh. S at 2 (Delivered Service Log). Castillo further reported that when she asked Q.S. what he was not supposed to tell, he insisted that his mother had told him not to "say." *Id*. Castillo stated in the DSL that she asked Q.S. to write it, and handed him a piece of paper, and that Q.S. wrote "sexes." *Id*. Plaintiffs argue that Castillo's reporting that Q.S. wrote "sexes" was false, noting that Castillo has never produced the paper on which Q.S. allegedly wrote the word. Plaintiffs point to evidence that Q.S. was asked to write the word "sexes" when he was interviewed later, on May 5, 2018. *See* Pl.'s Joint Exhibits, Exh. U at 26. Plaintiffs argue, and the Court agrees, that the word is illegible. *See id.* Plaintiffs argue that Castillo either lied about what Q.S. wrote on May 4, 2018, or acted with reckless disregard for the truth by

10

1   interpreting whatever he wrote to read "sexes." Those inferences reasonably may be drawn from
2   the record. Castillo's reporting that Q.S. wrote the word "sexes" when describing what his mother
3   had told him not to tell about was included in the Petition. *See* Pl.'s Joint Exhibits, Exh. BB at 4
4   (Petition ¶ b-4). A reasonable trier of fact could conclude that the inclusion of information in the
5   Petition that Q.S.'s mother told him not to tell about "sexes" relating to his sister and Pat was
6   material to the detention decision.

Based on this evidence, the Court concludes that a reasonable trier of fact could find that Castillo is subject to liability for judicial deception under Claim 6. The Court's identification of this one discrepancy is not intended to limit Plaintiffs' presentation of other examples at trial.

### b. Ricks

Ricks reported in the DSLs that when Williams was informed that the children would be taken into custody, Williams became "hostile" toward Ricks and "pursued" him out to the car in which the children were sitting. *See* Pls.' Joint Exhibits, Exh. S at 11 (Delivered Service Log). Ricks further reported that when a police officer stepped between Williams and Ricks, Williams "became physically aggressive" with the officer and had to be "restrained." *See id.* Plaintiffs argue that Ricks' reporting of this incident was false, directing the Court to the transcripts of Officer Ziebell's body cam footage of the incident. *See* Pls.' Joint Exhibits, Exh. L1 (Tr. of Ziebell's Body Cam Footage), Exh. M1 (Tr. of Ziebell's Body Cam Footage). A reasonable jury could conclude that the transcripts do not support Ricks' characterization of Williams as "hostile" and "aggressive." *See id.* They reflect that Williams questioned the removal of her children as she followed Ricks outside, stating, "That's not what we agreed on." *Id*. The transcripts also reflect that a male police officer initiated physical contact with Williams, as Williams told the officer numerous times not to touch her. *See id.* Viewing this evidence in the light most favorable to Plaintiffs, a reasonable trier of fact could conclude that Ricks mischaracterized Williams' conduct to make her look unstable, intentionally or with reckless disregard as to the truth of his characterization. Ricks' version of events, characterizing Williams as "hostile" and "aggressive" was incorporated into the Petition. *See* Pl.'s Joint Exhibits, Exh. BB at 6 (Petition ¶ b-10). A reasonable trier of fact could conclude that the inclusion of information regarding Williams'

11

"hostile" and "aggressive" behavior was material to the detention decision.

Based on this evidence, the Court concludes that a reasonable trier of fact could find that Ricks is subject to liability for judicial deception under Claim 6. The Court's identification of this one discrepancy is not intended to limit Plaintiffs' presentation of other examples at trial.

### c. Chacon

Plaintiffs argue that Chacon may be liable under the "reckless disregard" standard on the basis that she signed the Petition under penalty of perjury when she admittedly did not have personal knowledge of the factual assertions contained therein. As the Court noted in its MSJ Order, Plaintiffs have not cited a single case in which a social worker who submitted a Petition based on the investigative notes of other social workers was found liable for constitutional violations based on lack of personal knowledge of the facts in the Petition. Absent such authority, the Court is unpersuaded by Plaintiffs' argument that a social worker's signing of a Petition under penalty of perjury without personal knowledge of the facts therein constitutes "reckless disregard" of the truth that rises to the level of a constitutional violation.

However, Plaintiffs argued in opposition to summary judgment that Chacon may be liable for judicial deception for her conduct in omitting material facts from the Petition. The Court did not consider whether Chacon's omission from the Petition of material facts that were reported in the DSLs constituted "reckless disregard" for the truth. Chacon omitted from the Petition any reference to the statements in the DSLs that Castillo could not qualify Q.S. and L.S. *Compare* Pls.' Joint Exhibits, Exh. S at 1-2 (Delivered Service Log), *with* Pl.'s Joint Exhibits, Exh. BB (Petition). There is no explanation provided by Defendants as to why Chacon omitted that fact from the Petition. A reasonable jury could conclude that omission of the fact that Castillo could not qualify the children was material to the detention decision.

Based on this evidence, the Court concludes that a reasonable trier of fact could find that Chacon is subject to liability for judicial deception under Claim 6. The Court's identification of this one discrepancy is not intended to limit Plaintiffs' presentation of other examples at trial.

### d. Reinstatement of Claim 6 is Appropriate

Based on the evidence discussed above, the Court finds that disputed facts preclude

summary judgment on Claim 6 as to County Defendants Castillo, Ricks, and Chacon. The Court emphasizes that it has concluded that disputed facts exist as to *at least* the asserted examples of judicial deception discussed above. The Court's ruling does not limit Plaintiffs to those examples at trial. The Court cautions Plaintiffs, however, that in order to establish judicial deception based on misrepresentation or omission in the DSLs, they must show that those misrepresentations or omissions were reflected in the Petition and material to the detention decision. Plaintiffs' briefing in this case is replete with assertions regarding alleged misrepresentations and omission in the DSLs that do not appear to be reflected in the Petition. Misrepresentations and omissions in the DSLs, without more, cannot support a claim for judicial deception, as the thrust of the claim is deception of the court.

Accordingly, Plaintiffs' motion for reconsideration is GRANTED with respect to Claim 6, which is reinstated against Castillo, Ricks, and Chacon.

### C. *Monell* Claims

As discussed in the MSJ Order, Plaintiffs' *Monell* claims are alleged with such a lack of clarity in the FAC that Defendants did not even realize that they *had* been alleged. *See* MSJ Order at 25-26. The FAC alleges that "[t]hough the COUNTY and CITY is not repeated in the headings or body of every claim set forth below, due to the policies, practices, and customs, and/or the non-existent or inadequate training by COUNTY and CITY, Plaintiffs allege they are also Defendants for each claimed violation of constitutional rights alleged herein pursuant to the 4th or 14th Amendment, under the theory of liability commonly referred to as '*Monell* liability.'" FAC ¶ 366.

#### 1. Court's MSJ Ruling

At the hearing on the motion for summary judgment, the Court stated its understanding that Plaintiffs' *Monell* claims are limited to failure to train, and it asked Plaintiffs' counsel if the *Monell* claims are so limited. *See* MSJ Hrg. Tr. 47:10-19, ECF 155. Plaintiffs' counsel, Mr. Powell, answered in the affirmative. *See id.* The Court summarized the *Monell* claim in its MSJ Order as follows: "In light of the clarifications made by Plaintiffs in their briefing and at the hearing, the Court construes Plaintiffs' *Monell* claim to assert a failure to train County social workers and City law enforcement officers on the requirements for removal of minors without a

13

warrant." MSJ Order at 26. The Court went on to analyze the *Monell* claims against the County and City under *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784 (9th Cir. 2016), and it denied the summary judgment motions of the County and the City on those claims. *See* MSJ Order at 29, 30.

### 2. Plaintiffs' Challenges

Mr. Powell now asserts that immediately after conceding at the summary judgment hearing that Plaintiffs' *Monell* claims are limited to failure to train, he immediately withdrew that concession and stated that the *Monell* claims also encompasses a practice or custom of warrantless removals of minors. Mr. Powell acknowledges that the hearing transcript does not support his current assertion, as it does not reflect that Mr. Powell withdrew his concession as to the scope of the *Monell* claims. Plaintiffs nonetheless ask the Court to reconsider the portion of its MSJ Order limiting the *Monell* claims to training, and to allow them to pursue *Monell* claims based on a practice or custom of warrantless removals of minors.

### 3. Defendants' Response

In response, Defendants argue that Plaintiffs have not satisfied the requirements of Civil Local Rule 7-9.

### 4. Analysis

The Court has reviewed its notes from the hearing, and it finds no indication that Mr. Powell withdrew his concession that Plaintiffs' *Monell* claims are limited to training. As noted above, there is no evidence of such a withdrawal in the transcript of the hearing. While the Court has no reason to doubt the sincerity of Mr. Powell's representation regarding his memory of the hearing, the Court cannot credit that representation based on this record.

However, the Court's MSJ Order treats the *Monell* claims for failure to train as encompassing *Monell* claims for a practice or custom of warrantless removal. *See* MSJ Order at 29-30. In doing so, the Court relied on *Kirkpatrick*, in which the Ninth Circuit addressed *Monell* claims arising from county social workers' warrantless removal of a two-day-old child from the mother's custody in the hospital. *See Kirkpatrick*, 843 F.3d 784. The *Kirkpatrick* court reviewed the law on *Monell* claims for failure to train, stating that in order to prevail a plaintiff must establish that the municipality had notice of the need for more or different training. *See id.* at 794.

14

The plaintiff may demonstrate notice either by showing a pattern of similar constitutional violations by untrained employees, or that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Id.* at 793-94 (quotation marks and citation omitted). Applying those standards, the *Kirkpatrick* court held that the plaintiffs' evidence of an unconstitutional, unofficial policy of removing children from their parents without a warrant rendered the case before it one "in which the municipality's "inadequacy [is] so likely to result in the violation of constitutional rights" that a jury could reasonably find § 1983 liability without needing a pattern of violations to find the County culpable." *Id.* at 796. This Court similarly held that in light of Plaintiffs' evidence of a *de facto* policy of warrantless removal, "a reasonable trier of fact could conclude that the County's training of its social workers was so inadequate as to amount to deliberate indifference to the violation of the constitutional rights of Monterey County families, and that the inadequate training was the moving force behind the constitutional violations alleged in this case." MSJ Order at 30.

Plaintiffs point to the language in the MSJ Order discussing Plaintiffs' evidence of a practice or custom of removing children without obtaining warrants and without considering the risk of imminent bodily harm in the time necessary to obtain a warrant. *See* MSJ Order at 30. Plaintiffs assert that the manner in which the Court addressed their *Monell* claims is confusing and that Plaintiffs should be permitted to pursue two distinct *Monell* claims at trial, one for failure to train and one for a practice or custom of warrantless removals. After reviewing *Kirkpatrick* and the record evidence in this case, the Court agrees with Plaintiffs that although the *Monell* claims for failure to train and the *Monell* claims for a practice or custom of warrantless removal are closely linked, they are separate claims and Plaintiffs have presented sufficient evidence to go to trial on both sets of claims. The Court exercises its inherent authority to correct its own orders to reconsider its prior limitation on the *Monell* claims.

Plaintiffs' motion for reconsideration is GRANTED with respect to their *Monell* claims. Plaintiffs may pursue *Monell* claims based on inadequate training in obtaining warrants to remove minors, and on a practice or custom of engaging in unlawful warrantless removal of minors.

15

In addition to seeking reconsideration of the scope of their *Monell* claims, Plaintiffs seek reconsideration of the Court's evidentiary rulings excluding the Barrera and Franklin declarations describing child welfare investigations of other families. *See* MSJ Order at 7-8. Plaintiffs argue that if the scope of their *Monell* claims is expanded to include the warrantless removal practices of Monterey County, then excluding those declarations was erroneous. The Court sees no need to revisit the evidentiary ruling in question, as Plaintiffs have prevailed on their motion for reconsideration regarding the scope of their *Monell* claims and the Court has denied summary judgment on those claims. The Court's exclusion of the declarations at the summary judgment stage has no impact on the admissibility of any evidence at trial.

### D. Summary

For the reasons discussed above, Plaintiffs' motion for reconsideration is GRANTED as to all issues except the evidentiary rulings. The Court recognizes that granting reconsideration returns to the case issues that Defendants believed had been resolved in their favor, and it understands the frustration that Defendants expressed at this prospect during the Final Pretrial Conference. However, the Court is persuaded that Plaintiffs have demonstrated the existence of genuine issues for trial, and therefore grants reconsideration.

## IV. ORDER

(1) Defendants' administrative motion is DENIED;

(2) Plaintiffs' motion for reconsideration is GRANTED AS FOLLOWS:

    (a) The motion is GRANTED with respect to Plaintiffs' request that Claim 6 be reinstated against Castillo, Ricks, and Chacon; and

    (c) The motion is GRANTED with respect to the scope of Plaintiffs' *Monell* claims, which include claims of inadequate training in obtaining warrants to remove minors, and claims of a practice or custom of engaging in unlawful warrantless removal of minors.

(3) This order terminates ECF 175 and 203.

Dated: May 17, 2021

BETH LABSON FREEMAN
United States District Judge

16